491 P.2d 173

**Joe ARAGON, Administrator of the Estate of Joseph T. Aragon, a minor, Deceased, Plaintiff-Appellee,**

**v.**

**Roelof SPEELMAN and Rose Speelman, Defendants-Appellants,**

**Mrs. Joe Aragon, Plaintiff in Intervention-Appellant.**

**No. 633.**

Court of Appeals of New Mexico.

Nov. 12, 1971.

## OPINION

HENDLEY, Judge.

Plaintiff brought suit to recover damages for a wrongful death. The jury returned a verdict for plaintiff. Defendants filed a motion for judgment NOV, or in the alternative for a new trial. The motion was denied and defendants appeal raising four points for reversal; contributory negligence, erroneous instructions, assumption of risk and proximate cause. Plaintiff cross-appeals on the dismissal of a complaint in intervention by decedent's mother for damages for bystander recovery. We reverse and grant defendants a new trial but affirm the trial court's dismissal of the complaint in intervention. Our reversal involves two issues—instructions on change of lane and sudden emergency. Because of this reversal we do not discuss other issues raised by defendants. However, we are of the opinion that on the present record any contributory negligence of decedent as the proximate cause of the accident was a jury question, the trial court did not err in refusing to instruct on assumption of risk and the issues of defendants' negligence and proximate cause were for the jury.

In viewing the evidence and all reasonable inferences that flow therefrom in the light most favorable to the plaintiff and to support the verdict the record discloses the following. See Tapia v. Panhandle Steel Erectors Company, 78 N.M. 86, 428 P.2d 625 (1967).

State Highway 47 runs generally north and south in front of the home in which plaintiff-decedent resided. Approximately twenty seconds before the accident occurred plaintiff-decedent was observed by his mother riding his bicycle in a northerly direction on Highway 47 towards the double yellow line which divided the east from the west half of the four-lane highway. Between that time when the decedent's mother saw and spoke to her son and the time of impact her son had ridden his bicycle from the east half to the west half of the highway and was proceeding in a general southerly direction in the outside southbound lane. The defendant-driver was proceeding in a southerly direction in the outside lane of the highway and approximately two-tenths of a mile before the point of impact observed the decedent in the same lane. Defendant-driver changed to the inside lane some two or three hundred yards prior to the point of impact. Decedent had his back to defendant-driver and was pedalling his bicycle in the western-most lane of the highway and had no knowledge that defendant's automobile was approaching from behind. The defendant-driver did not sound her horn to alert the bicyclist of her approach. The speed limit in the area was 50 miles an hour and the defendant-driver testified she may have stated to the State Policeman investigating the accident that she was travelling 60 miles per hour but was travelling 50 miles per hour at the impact. Immediately after the accident the defendant-driver told the investigating policeman she did not know which lane the boy was in. She just saw him and swerved and hit the brakes and eventually came to rest near the east side of the highway.

A passenger in the automobile stated she first observed the decedent moving in a generally west-to-east direction in the path of defendant-driver's automobile which was in the outside lane; that this observation was about two-tenths of a mile before the impact; that as the automobile continued in the southerly direction plaintiff-decedent had moved from a point on the west side of the western-most southbound lane to just short of the middle of the two southbound lanes; and that decedent was at the white

stripe which divides the two southbound lanes and was travelling in a south-easterly direction on the bicycle in the middle of the highway just before impact.

The investigating State Police officer testified that the left skid mark of defendant's automobile was 194 feet and that the right skid mark was 62 feet; that this was caused by an abrupt swerving and application of the brakes; that the place of impact was in the inside southbound lane as shown by a "gouge" mark 2 feet in from the yellow double dividing line; that the impact was probably just prior to the "gouge" marks; that after the impact the bicycle wound up in the inside southbound lane; that the impact to the bicycle appeared to begin as a glancing blow to the rear wheel with the primary impact in front of the seat, making a "V" out of the bicycle; that the impact appeared to have been on the left side of the bicycle; and that the point of impact on the defendant's automobile was on the right front corner and headlight with damage there and to the hood and windshield.

### CHANGE OF LANE.

Plaintiff submitted, and the trial court gave, an instruction which stated:

"No. 16—There was in force in the state at the time of the occurrence in question a certain statute 64–18–16 [N.M.S.A. 1953 (Repl. Vol. 1960)] which provided in part that:

" 'Whenever any roadway has been divided into two (2) or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply:

"(a) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety; * * *'

"If you find from the evidence that the defendant conducted herself in violation of this statute you are instructed that such conduct constituted negligence as a matter of law."

Defendant objected on the grounds:

" * * * that there is no evidence that the defendants' vehicle moved from one lane to another at anywhere close to where the accident occurred and that the instruction therefore has no applicability to this case and prejudices the defendants' action."

We agree.

■ As stated in Garcia v. Barber's Super Markets, Inc., 81 N.M. 92, 463 P.2d 516 (Ct.App.1969):

"A party is entitled to an instruction on his theory of the case if such a theory is pleaded and supported by the evidence. * * * Moreover, if a theory is pleaded and supported by the evidence, a refusal to instruct the jury on that theory constitutes reversible error. * * * Conversely, if there is no evidence to support the theory, it would be reversible error to instruct on that theory. * * *" (Citations omitted).

We fail to find anywhere in the record any evidence or any inference which would lead to a conclusion that defendant was proceeding in violation of the statute at the time of the change of lane. At the time of the change of lane by defendant-driver the record shows that the defendant-driver was approximately two to three hundred yards from the decedent and that decedent was in the outside lane and that the inside lane was unobstructed. Further, the record reveals there was no other vehicular traffic in the general area at the time of the accident.

■ Before a motorist travelling on a multi-lane highway changes lanes he must first ascertain if he can do so safely without endangering following or approaching traffic. Section 64–18–16, supra. A person travelling upon a multi-lane roadway has the right to assume, in the absence of indication to the contrary, that a fellow motorist will continue in his lane of travel. See Dent v. Falvey, 371 S.W.2d 63 (Tex. Civ.App.1963); Ballas v. Superior Mutual Insurance Co., 13 Wis.2d 151, 108 N.W.2d 192 (1961).

■ There is no evidence that defendant-driver could not safely change lanes when she did. Failing such evidence, the instruction raised a false issue and only tended to confuse the jury.

## SUDDEN EMERGENCY.

■ Defendants submitted an instruction on the doctrine of sudden emergency in the form of UJI 13.14. The trial court gave the instruction in the following form:

"No. 19—A person who, without negligence on *his* [or] her part, is suddenly and unexpectedly confronted with peril arising from either the actual presence of or the appearance of imminent danger to herself or another, is not expected nor required to use the same judgment and prudence that is required of her in the exercise of ordinary care in calmer and more deliberate moments.

"*His or* her duty is to exercise only the care that a reasonably prudent person would exercise in the same situation.

"If at that moment *he or* she does what appears to *him or* her to be the best thing to do, and if *his or* her choice and manner of action are the same as might have been followed by any reasonably prudent person under the same conditions then she has done all the law requires of *him or* her, even though in the light of after events, it might appear that a different course would have been better and safer." (The italicized portion of the instruction was added by the trial court over the objection of the defendant).

Defendant objected to this on the grounds: " * * * that there is no evidence whatsoever that the deceased was faced with a sudden emergency nor had to act or that his actions were because of any sudden and unexpected emergency. Therefore, the instruction as it applies to the decedent is incorrect and the defendants are prejudiced thereby."

With regard to that part of the instruction which would relate to decedent the instruction was erroneous. The record fails to reveal any evidence that the decedent was aware of the presence of the defendant's automobile.

. ■ Defendant would have us infer from the testimony that the noise of the automobile startled decedent and caused him to swerve to the left by being alarmed and that the decedent acted in an erratic manner and thus created an emergency situation. With this we cannot agree. There is no testimony that plaintiff-decedent was startled. Nor are there facts from which an inference could be drawn that plaintiff-decedent was startled. Inferences must be founded on facts. See Dull v. Tellez (Ct.App.) 83 N.M. 130, 489 P.2d 406.

Plaintiff cites the case of Webb v. Felton, 266 N.C. 707, 147 S.E.2d 219 (1966) for the proposition that there are inferences which would flow from the foregoing facts which would lead to the conclusion that an emergency situation would exist when an automobile is overtaking a bicyclist. In *Webb* there was evidence of a sudden, loud noise just before the accident. Here, there is no evidence of such a noise which would frighten or give notice to the bicyclist.

We note that § 64–19–2, N.M.S.A. 1953 (Repl.Vol.1960) states in part that "[e]very person riding a bicycle upon a roadway shall be granted all of the rights and shall be subject to all of the duties applicable to the driver of a vehicle by this act. * *" This statute by its very nature, places bicyclists in the same duty category as other vehicular traffic.

## BYSTANDER RECOVERY.

Decedent's mother filed a complaint in intervention which alleged among other things that she had spoken to decedent (her son) before he was struck by defendant's automobile; that the next thing she heard was "a horrible loud sound"; that upon turning she saw her son flying through the air above defendant's automobile; and, that as a result of the negligence of defendant she suffered fright, shock and emotional distress. The trial court dismissed the complaint in intervention and intervenor appeals.

The question of whether what is commonly referred to as bystander recovery, under the foregoing facts, states an actionable claim is one of first impression in New Mexico.

Intervenor asserts that we should follow the reasoning in Dillon v. Legg, 68 Cal. 2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968). There the California court in reversing the earlier decision of Amaya v. Home Ice, Fuel and Supply Co., 59 Cal.2d 295, 29 Cal. Rptr. 33, 379 P.2d 513 (1963) held that a mother who personally witnessed the defendant's car colliding with her infant daughter, lawfully crossing the road, had stated a good cause of action where the emotional distress and shock suffered resulted in physical injuries.

Intervenor also refers us to Daley v. LaCroix, 384 Mich. 4, 179 N.W.2d 390 (1970) which permitted bystander recovery. However, that case was also predicated upon an allegation of physical injury caused by the shock of having witnessed the death of a plaintiff's child.

Intervenor would have us go beyond *Dillon* and *Daley* where there was a claim of physical injury. She would have us hold that the allegations of fright, shock and emotional distress are sufficient to defeat a motion to dismiss for failure to state a claim. This we will not do.

Further, we do not decide whether bystander recovery, under a factual situation as set forth in *Dillon* or *Daley*, would be allowed. Our decision goes no further than to say we will not permit a recovery under the allegations of the instant case.

For collected cases and comments see 29 A.L.R.3rd 1337 (1970) "Right to Recover Damages in Negligence for Fear of Injury to Another, or Shock or Mental Anguish at Witnessing Such Injury"; 33 American Trial Lawyers Journal (1970) page 1; and Melendes, 11 For the Defense, No. 2, April, 1970, page 41.

Reversed and remanded for proceedings not inconsistent herewith.

It is so ordered.

WOOD, C. J., and COWAN, J., concur.