673 P.2d 822

Jose RAMIREZ, as Personal Representative of the Estate of Santana Ramirez and guardian for Job, Jesus Elena and Bertha Alicia Ramirez, and Socorro Brown, mother and next friend of Karen Brown, Plaintiffs-Appellants,

v.

William (Bill) ARMSTRONG, Defendant-Appellee.

No. 14978.

Supreme Court of New Mexico.

Dec. 21, 1983.

Ronald Morgan, Albuquerque, for plaintiffs-appellants.

Civerolo, Hansen & Wolf, Carl J. Butkus, Paul L. Civerolo, Albuquerque, for defendant-appellee.

Kegel & Montez, Michael R. Morow, Santa Fe, for NM Trial Lawyers Ass'n, amicus curiae.

## OPINION

FEDERICI, Justice.

This is a tort action certified to this Court by the Court of Appeals. It was brought by Jose Ramirez as Guardian for Job, Elena, and Bertha Ramirez, and by Socorro Brown for her daughter Karen Brown. Appellants (plaintiffs) sought damages for the wrongful death of Santana Ramirez. They also sought damages for the injuries they allegedly suffered as a result of the emotional distress caused them by witnessing, or being told of, Santana Ramirez' death. The wrongful death claim was settled. The appellee (defendant) moved for judgment on the pleadings on the remaining claims, asserting that no cause of action existed in New Mexico which would allow appellants to recover damages for emotional distress. The trial court granted defendant's motion and dismissed plaintiffs' complaint. Plaintiffs appealed. We reverse in part and affirm in part.

The sole issue before this Court is whether a cause of action exists in New Mexico for negligent infliction of emotional distress to bystanders. We hold that it does, under certain conditions.

■ The judgment of the trial court was based on the pleadings, therefore we consider the facts pleaded as undisputed for purposes of this appeal. *Matkins v. Zero Refrigerated Lines, Inc.*, 93 N.M. 511, 602 P.2d 195 (Ct.App.1979). The facts as they appear in the complaint are that Santana Ramirez was attempting to cross DeeAnn Street in Gallup, New Mexico when he was struck and killed by a motor vehicle operated by William Armstrong. Walking behind Mr. Ramirez were two of his children, Job and Elena, and also Karen Brown, a young girl living with the Ramirez family. All three children saw Mr. Armstrong's vehicle

strike Mr. Ramirez. As a result of the emotional distress and shock caused by their observation of this event, all three children contend that they suffered both physical and mental injury. Another minor child of Mr. Ramirez, Bertha Ramirez, who was not present at the scene of the accident, contends that she suffered physical and mental injury as a result of the emotional distress and shock caused by learning of the death of her father, and from viewing him after the accident.

Whether a bystander, not in any physical danger, may recover for the consequences resulting from the emotional shock of seeing a person injured through the negligence of another is a controversial question in the law. New Mexico recognizes the tort of *intentional* infliction of emotional distress. *Dominguez v. Stone,* 97 N.M. 211, 638 P.2d 423 (Ct.App.1981). However, recovery for negligent infliction of emotional distress is a question which New Mexico courts have addressed only tangentially. In *Tompkins v. Carlsbad Irrigation District,* 96 N.M. 368, 630 P.2d 767 (Ct.App.1981), a seventeen month old boy drowned in a culvert maintained by the Carlsbad Irrigation District, and the boy's mother sought to recover damages. No bodily injury to plaintiff was shown. The Tort Claims Act, NMSA 1978, Section 41–4–11(A) (Cum.Supp.1980), under which plaintiff's claim was brought, waived governmental immunity only for damages resulting from bodily injury, wrongful death or property damage. Although emotional injury could be manifested by bodily injury, no bodily injury existed and the Court of Appeals did not consider the issue of bystander recovery. *Id.* at 372, 630 P.2d at 771.

In *Aragon v. Speelman,* 83 N.M. 285, 491 P.2d 173 (Ct.App.1971) suit was brought by the mother of a boy who had heard defendant's automobile strike her son, and had turned to see the boy in the air above defendant's automobile. The Court of Appeals refused to permit recovery since the plaintiff alleged no physical injury as a result of the emotional distress caused by her perception of the accident.

This Court discussed the issue now before us in *Curry v. Journal Pub. Co.,* 41 N.M. 318, 68 P.2d 168 (1937). In that case, the Albuquerque Journal mistakenly published a news item which stated that the former Territorial Governor of New Mexico, George Curry, had died. Plaintiffs, the Governor's son and daughter-in-law, asserted that reading this false statement caused them great pain and anguish, which resulted in physical injury. In that opinion, the Court held that negligently spoken or written words do not constitute a cause of action for emotional distress. Nonetheless, by way of dicta, the Court indicated that a family member who witnessed the negligent killing or serious injury of another member of the family had no cause of action against the tortfeasor based on negligent infliction of emotional distress. To the extent that this dicta conflicts with our holding in the present case, it is hereby expressly overruled.

The courts in other jurisdictions have developed three rules in an attempt to define the liability for negligence to a bystander. They are: (1) the "impact" rule; (2) the "zone of danger" rule; and (3) the "negligence theory," or *Dillon* rule, which was adopted by the California Supreme Court in *Dillon v. Legg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968). The development of the first two of these rules is a topic which has been extensively discussed. *See e.g.,* W. Prosser, The Law of Torts § 54 (4th ed. 1971); Simons, *Psychic Injury and the Bystander: The Transcontinental Dispute Between California and New York,* 51 St. John's L.Rev. 1 (1976); *Annot.,* 29 A.L.R.3d 1337 (1970); *Leong v. Takasaki,* 55 Hawaii 398, 520 P.2d 758 (1974); *Dziokonski v. Babineau,* 375 Mass. 555, 380 N.E.2d 1295 (1978). The logic supporting the *Dillon* rule was well articulated in *Dillon* by the California Supreme Court. Subsequent cases in jurisdictions adopting the *Dillon* rationale have shed light on the application of the rule. *See e.g., Corso v. Merrill,* 119 N.H. 647, 406 A.2d 300 (1979); *Portee v. Jaffee,* 84 N.J. 88, 417 A.2d 521 (1980); *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979); *D'Ambra v. United States,* 114 R.I. 643, 338

A.2d 524 (1975). Prior to the present case, we had no occasion to determine which, if any, of these rules should be adopted in New Mexico.

■ In New Mexico, negligence encompasses the concepts of foreseeability of harm to the person injured and of a duty of care toward that person. *Bogart v. Hester*, 66 N.M. 311, 347 P.2d 327 (1959). Jurisdictions adopting the "impact" or "zone of danger" rules argue the lack of these elements when denying recovery to bystanders not themselves in any physical danger.

■ Duty and foreseeability have been closely integrated concepts in tort law since the court in *Palsgraf v. Long Island Railroad Co.*, 248 N.Y. 339, 162 N.E. 99 (1928) stated the issue of foreseeability in terms of duty. If it is found that a plaintiff, and injury to that plaintiff, were foreseeable, then a duty is owed to that plaintiff by the defendant. Dean Prosser defines duty, in negligence cases, as "an obligation to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." W. Prosser, The Law of Torts § 53 (4th ed. 1971). He recognizes, however, that "there is nothing sacred about 'duty,' which is nothing more than a word, and a very indefinite one, with which we state our conclusion." *Id.* § 43. The key to Dean Prosser's definition is the requirement that the obligation of the defendant be one to which the law will give recognition and effect. Cases dealing with negligent infliction of emotional distress often couch the issue in terms of foreseeability. More important to the acceptance of this cause of action is a determination of the specific personal interest to be protected. This interest, in turn, establishes the legally recognized obligation of the defendant to the plaintiff.

■ The interest to be protected in the present case is similar to that recognized by the Supreme Court of New Jersey in *Portee v. Jaffee*, 84 N.J. 88, 417 A.2d 521 (1980). There, the court stated:

[T]he interest assertedly injured is more than a general interest in emotional tranquility. It is the profound and abiding sentiment of parental love. The knowledge that loved ones are safe and whole is the deepest wellspring of emotional welfare. Against that reassuring background, the flashes of anxiety and disappointment that mar our lives take on softer hues. No loss is greater than the loss of a loved one, and no tragedy is more wrenching than the helpless apprehension of the death or serious injury of one whose very existence is a precious treasure. The law should find more than pity for one who is stricken by seeing that a loved one has been critically injured or killed.

*Id.* at 97, 417 A.2d at 526. The existence of a marital or intimate familial relationship is the nucleus of the personal interest to be protected. The tort of negligent infliction of emotional distress is a tort against the integrity of the family unit.

In order to insure that the interest to be protected is actually foreseeable, courts, beginning with *Dillon,* have adopted a number of criteria to be met in any case where such injury is claimed. Based upon the experience that has been gained by various state courts in dealing with the *Dillon* approach over the past years, we are adopting those criteria which have effectively assured the possibility of recovery by deserving claimants, while at the same time placing constraints on liability of defendants.

■ The following standards are adopted by this Court to apply to actions for negligent infliction of emotional distress to bystanders.

1. There must be a marital, or intimate familial relationship between the victim and the plaintiff, limited to husband and wife, parent and child, grandparent and grandchild, brother and sister and to those persons who occupy a legitimate position in loco parentis;

2. The shock to the plaintiff must be severe[1], and result from a direct emo-

---

1. To recover under the theory of intentional

infliction of emotional distress in New Mexico,

tional impact upon the plaintiff caused by the contemporaneous sensory perception of the accident, as contrasted with learning of the accident by means other than contemporaneous sensory perception, or by learning of the accident after its occurrence;

3. There must be some physical manifestation of, or physical injury to the plaintiff resulting from the emotional injury;

4. The accident must result in physical injury or death to the victim.

■ These criteria do not alter traditional legal principles of the tort of negligence in New Mexico. Proof of the other elements of a cause of action in negligence, as well as proof of damages, are still required. In order for a plaintiff to recover under the tort of negligent infliction of emotional distress, he must not only meet the outlined criteria, but also the other traditional requirements recognized under established principles of tort law. This cause of action imposes no new obligation of conduct on potential defendants. Ordinary care is still required, and use of such ordinary care will relieve potential defendants from liability. W. Prosser, The Law of Torts § 43 (4th ed. 1971).

Various policy arguments have been articulated in opposition to adoption of the *Dillon* rule. When policy arguments are raised, it is proper to consider whether other courts have experienced the evils warned against. *Flores v. Flores,* 84 N.M. 601, 506 P.2d 345 (Ct.App.), *cert. denied,* 84 N.M. 592, 506 P.2d 336 (1973). Arguments concerning the dire consequences of recognizing this type of cause of action have been unpersuasive in light of the development of bystander recovery in California following *Dillon.* No flood of litigation has resulted, no unlimited liability has been placed on defendants[2], and this type of action has not proven to be unmanageable to the California courts. *See Molien v. Kaiser Founda-*

*tion Hospitals,* 27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813 (1980); *Justus v. Atchison,* 19 Cal.3d 564, 139 Cal.Rptr. 97, 565 P.2d 122 (1977); *Krouse v. Graham,* 19 Cal.3d 59, 137 Cal.Rptr. 863, 562 P.2d 1022 (1977).

The case relied on most heavily by defendant, and also given much deference by jurisdictions refusing the logic of the *Dillon* rule, is *Tobin v. Grossman,* 24 N.Y.2d 609, 301 N.Y.S.2d 554, 249 N.E.2d 419 (1969). The New York court in *Tobin* feared that once foreseeability was determined to include family members, in this case a mother who came to the scene after the accident, unlimited expansion of the concept would result. This has not been the case. The *Tobin* court's main reason for rejecting bystander recovery was their fear of unlimited liability. Since *Tobin,* the New York court has recognized this fear as the major obstacle to acceptance of the tort of negligent infliction of emotional distress. *Lafferty v. Manhasset Medical Center Hospital,* 54 N.Y.2d 277, 445 N.Y.S.2d 111, 429 N.E.2d 789 (1981). This fear has not materialized in jurisdictions accepting the *Dillon* rule. Additionally, we have not succumbed in the past to arguments concerning the dangers of expanded liability. *Hicks v. State,* 88 N.M. 588, 544 P.2d 1153 (1976); *McGeehan v. Bunch,* 88 N.M. 308, 540 P.2d 238 (1975). We see no reason to accept that argument now.

■ Defendant argues that comparative negligence concepts could cause a defendant to be liable to a bystander in an amount exceeding the defendant's fault. This is, however, not a valid argument because, under established case law, the comparative fault of each actor involved in an accident will determine the relative liability of each. The total damages suffered by a plaintiff will be apportioned between all parties in proportion to their fault. *Scott v. Rizzo,* 96 N.M. 682, 634 P.2d 1234 (1981). Under the

---

the distress inflicted must be of a severity which no reasonable person could be expected to endure. *Dominguez v. Stone,* 97 N.M. 211, 638 P.2d 423 (Ct.App.1981). The same standard shall apply to unintentional, negligent infliction of emotional distress.

2. Some commentators argue that decisions of California courts have been unduly restrictive in cases subsequent to *Dillon. See* Nolan & Ursin, *Negligent Infliction of Mental Distress: Coherence Emerging from Chaos,* 33 Hastings L.J. 583 (Jan. 1982).

rule announced in *Bartlett v. New Mexico Welding Supply, Inc.,* 98 N.M. 152, 646 P.2d 579 (Ct.App.), *cert. denied,* 98 N.M. 336, 648 P.2d 794 (1982), one defendant may not be required to pay another defendant's share of the damages.

 Defendant argues that this cause of action is barred by New Mexico's Wrongful Death Act. This is not a wrongful death case. We hold, in adopting the reasoning in this case, that a defendant may be liable in a wrongful death action, yet also be liable in a separate tort action for negligent infliction of emotional distress to a bystander. *See Kilkenny v. Kenney,* 68 N.M. 266, 361 P.2d 149 (1961).

 The judgment of the trial court is reversed as to plaintiffs Job Ramirez and Jesus Elena Ramirez, and affirmed as to plaintiffs Bertha Alicia Ramirez and Karen Brown. The cause is remanded to the trial court with instructions to proceed with the action initiated by plaintiffs Job Ramirez and Jesus Elena Ramirez in accordance with the views expressed herein.

IT IS SO ORDERED.

PAYNE, C.J., SOSA, Senior Justice, and RIORDAN and STOWERS, JJ., concur.