**Claudia LaJean WHALLEY,**
**Plaintiff-Appellant,**

**v.**

**Chester Y. SAKURA, Jr., M.D.,**
**Defendant-Appellee.**

**No. 83–1292.**

United States Court of Appeals,
Tenth Circuit.

Oct. 29, 1986.

Kathleen Price Watson of Branch, Eaton & Keenan, P.A., Albuquerque, N.M. (Turner W. Branch was also on the brief), for plaintiff-appellant.

Alice Tomlinson-Lorenz of Miller, Stratvert, Torgerson & Brandt, P.A., Albuquerque, N.M. (Marilyn Mason-Plunkett was also on the brief), for defendant-appellee.

Before HOLLOWAY, Chief Judge, and DOYLE * and McKAY, Circuit Judges.

HOLLOWAY, Chief Judge.

In this diversity action, plaintiff-appellant Whalley allegedly suffered psychological injury and mental anguish as a result of defendant Dr. Sakura's negligent care following breast reconstruction surgery in 1981.[1] The trial court directed a verdict in favor of the defendant on this claim, relying on the absence of any negligently-inflicted physical injuries. In light of intervening decisions of the Supreme Court of New Mexico, we conclude that we must reverse.

## I.

In 1974 plaintiff was diagnosed as suffering from cancer of the right breast. Later that year, she underwent a radical mastectomy of that breast and an eight-week program of radiation therapy. Two years later she had the breast reconstructed. In February 1981 plaintiff consulted the defendant at a surgical clinic in Albuquerque, New Mexico. He advised a second reconstruction of her right breast and, eventually, a subcutaneous mastectomy of her left breast. Plaintiff consented and the defendant performed a latissimus dorsi myocutaneous flap reconstruction of her right breast on February 23, 1981.

Shortly after the surgery plaintiff developed a skin rash on her thighs and torso. Approximately three days later, she noticed that the surgical wound was turning black and developing blisters. Plaintiff allegedly tried, without success, to discuss the post-operative problems with the defendant.

The defendant discharged plaintiff from the hospital on February 28. Later that evening she began experiencing severe pains and the defendant readmitted her to the hospital. During the next two weeks portions of the subcutaneous flap became infected because of restricted circulation into the surgical area. The incision gradually opened, causing some of her flesh to fall out. Plaintiff claims that defendant remained unwilling to discuss the post-operative problems with her. Defendant disputes this assertion, claiming he did counsel plaintiff.[2] On March 16 she consulted another plastic surgeon, Dr. Burton Weber,

---

* The Honorable William E. Doyle heard the argument of this appeal but did not participate in this opinion.

1. The plaintiff averred three claims in her complaint: (1) lack of informed consent; (2) negligent post-operative care; and (3) abandonment. I R. 1–2. At the close of her case-in-chief, she voluntarily withdrew the abandonment claim. The trial judge submitted the informed consent issue to the jury, which rendered a verdict in favor of the defendant.

2. Defendant testified that before the surgery he had discussed possible difficulties regarding plaintiff's healing process. He said that he told plaintiff before the operation that radiation might endanger her blood supply or the healing of her wound. He also testified that he discussed capsule formation on the reconstructed breast and the possibility that the breasts would be asymmetrical. According to defendant, plaintiff developed some superficial blisters and skin loss after the operation, but defendant felt that her progress appeared satisfactory. Between March 6 and 16, however, defendant determined that the blood supply to the myocutaneous flap had been compromised.

Defendant testified that he then told plaintiff that she might lose some skin. He also testified that until March 16 he had not thought that plaintiff would lose the implant. He added that even though plaintiff had not been concerned about this possibility, he wanted to readmit her to the hospital on March 16 and give her further counselling about the possibilities and risks. However, he was unable to do so because plaintiff had already left his care.

who subsequently removed the implant and performed a third reconstruction of the right breast.

Plaintiff testified that the defendant's refusal to communicate left her depressed and nervous. She consulted several clinical psychologists in Jacksonville, Florida, and Albuquerque, New Mexico. One of the Albuquerque psychologists, Dr. Samuel Roll, met with plaintiff approximately eight times between May 1981 and December 1982 and administered a number of psychological tests. He testified that plaintiff was suffering from intense depression and that her psychological condition was a result of the "operation with Dr. Sakura and its aftermath." V R. 595.

At trial, plaintiff withdrew her claim that defendant abandoned her and discontinued medical attention for her. The trial judge sustained a motion for a directed verdict for defendant at the close of plaintiff's evidence on her claim of negligent infliction of psychological injury, removing that claim from the jury's consideration. The judge submitted the claim of lack of informed consent to the jury, which found for the defendant on that claim. This appeal concerns only the claim of psychological injury by defendant's negligence, and claimed error by the trial judge in directing a verdict for the defendant on that claim.

## II.

■ Plaintiff argues that the trial court erred in directing a verdict for the defendant on her claim for negligent infliction of psychological injury with emotional distress. More specifically, plaintiff contends that the court erred in rejecting her claim on the basis that one of her medical witnesses, Dr. Weber, had conceded that the failure of care by the defendant had nothing to do with any of the plaintiff's physical problems and did not have any effect on the final outcome of the reconstruction surgery. V R. 619–620. Plaintiff contends that she had established a case, including the requisite proximate causal link, of negligent post-operative care resulting in psychological injury. Appellant's Brief-in-Chief 8.

Defendant first responds that the plaintiff did not advise the trial court that she was asserting a "new theory of liability," negligent infliction of emotional distress, in place of the claim of malpractice on which the case had proceeded, and that plaintiff did not ask the trial court to determine if New Mexico would allow recovery on a theory of negligent infliction of emotional distress, which was allegedly argued for the first time on appeal. Appellee's Answer Brief 10.

From our consideration of the complaint, the pretrial order and the trial record, we cannot agree with the defendant that the claim of negligent infliction of psychological injury with emotional distress was not presented to the trial court. Plaintiff's averment in her complaint was general and after alleging negligence in the effort for reconstruction of the right breast, it asserted the general allegation that "[o]nce it became evident that there was to be loss of part of the flap, the post-operative care of Dr. Sakura fell below the standard of other physicians in the vicinity of Albuquerque, New Mexico." I R. 2. The pretrial order likewise stated the claims of the plaintiff in general terms, including a claim that "[f]ollowing surgery, once it became evident that there was going to be a loss of part of the subcutaneous flap, Defendant's post-operative care of plaintiff fell below the standard of other physicians in the vicinity of Albuquerque, New Mexico, and he abandoned plaintiff." I R. 15. We note also that in the listing of exhibits of the plaintiff, there was a designation of the records and bills from the Mental Health Resource Center, Jacksonville, Florida, I R. 17, and a designation of other medical records including treatment by the staff at the Mental Health Resource Center at Jacksonville. *Id.* at 19.

We have referred to the general nature of the allegations of negligence in post-operative care. In viewing those averments, we must liberally construe the pretrial order to include "all the legal and factual

theories inherent in the issues defined therein." *Stone v. First Wyoming Bank, N.A.*, 635 F.2d 332, 347 (10th Cir.1980) (quoting *Century Refining Co. v. Hall*, 316 F.2d 15, 20 (10th Cir.1963)); *see also Trujillo v. Uniroyal Corp.*, 608 F.2d 815, 818 (10th Cir.1979) (quoting *Rodriguez v. Ripley Industries, Inc.*, 507 F.2d 782, 787 (1st Cir.1974)) (pretrial order liberally construed "to cover any of the legal or factual theories that might be embraced by [its] language").

Moreover, the testimony of plaintiff's experts, Dr. Roll and Dr. Weber, dealt extensively with defendant's lack of proper post-operative communication and counselling and the resulting psychological injury. Defendant argues that this was related to plaintiff's other claims of a lack of informed consent and abandonment of defendant in the post-operative care stage. While this may be true, it is also reasonable to view the proof as covering a claim of negligent infliction of psychological injury on plaintiff, with physical manifestations detailed by Dr. Roll. During plaintiff's case in chief, Dr. Roll testified at length concerning the psychological impact on plaintiff of the failure of defendant to communicate with her when the post-operative problems became evident. Dr. Roll detailed further the physical manifestations of the plaintiff's psychological injury including loss of energy, fatigue, psychomotor retardation or slowing down of her mobility, low energy level, and sleep disturbance. V R. 561–64; 587–88. From all the psychological testing, records and interviews with plaintiff, Dr. Roll testified that plaintiff was suffering a major depression interfering with her emotional ability, intellectual productivity and interpersonal capacity, and he concluded that this was predicted over a long period which, without treatment, would become worse, with the potentiality of suicide. V R. 594. He concluded that with a high degree of scientific certainty, this psychological condition was causally related to the operation by the defendant and its aftermath. V R. 595. Further, Dr. Weber testified in connection with the post-operative care and the communications by the defendant, that in his opinion the standards of good medical care were not met. V R. 541–45.

From our consideration of the proof introduced by the plaintiff, we are convinced that it did embrace the claim of negligent post-operative care producing alleged psychological injury with physical manifestations. Moreover, in the argument of plaintiff's counsel to the trial court in opposition to the motion for a directed verdict, counsel dealt directly with the testimony of Dr. Weber and the defendant's argument that the defendant's post-operative care did not affect the outcome of the case. VI R. 627–629. In response, plaintiff's counsel argued that he thought there was testimony from plaintiff and from Dr. Roll that the post-operative care had "caused her some psychological damage, and that is an element of damages that we are seeking recovery for." Her counsel further pointed out that the doctor had "said there was a deviation in his opinion from the acceptable standard on post-operative care ..." VI R. at 629. Thus both the evidence and the argument of counsel based on it did include a claim by plaintiff of negligent post-operative care, producing psychological injury and mental distress.

It is true that the previous day at trial, plaintiff's counsel had made some concessions in connection with Dr. Weber's testimony that the lack of communication had not affected the final outcome. V R. 621, 624. Nevertheless, in the concluding argument that followed the next day, plaintiff's counsel pointed to testimony on the defendant's lack of counselling, and to the psychological damages to plaintiff. This argument and the extensive testimony of Dr. Roll, Dr. Weber and plaintiff's lay witnesses developed the theory and we must agree with plaintiff that the claim of negligent infliction of psychological injury and mental distress, with physical manifestations, was presented to the trial court.

We thus conclude that we must decide whether the trial court was correct in its application of New Mexico law when that claim was rejected by the granting of the

motion for a directed verdict on the claim. We turn to that legal issue.

### III.

### A.

When the trial judge granted the directed verdict against plaintiff's claim of negligently inflicted psychological injury he stated that he was granting the motion on the basis of Dr. Weber's testimony; that the doctor had opined that the defendant had failed by some kind of a lack of communication; but that the doctor had said that this did not have to do with the actual, medical, physical care of the plaintiff and probably did not alter the result. VI R. 630. The judge earlier said his notes indicated that Dr. Weber testified that such failure to meet the standard of care would not have "affected the final outcome, and of course what [Dr. Weber] was talking about was the medical aspect, that is the physical aspect of the reconstruction process." VI R. 621.

■ We must agree that the rejection of plaintiff's claim of negligent infliction of psychological injury and emotional distress was error. The judge's ruling may be viewed as premised on an interpretation of New Mexico law that physical injury must be shown to have resulted from the psychological injury and that Dr. Weber had conceded that the surgical result was not affected by the psychological injury. Or, it may be said that the trial court did not treat the claim of such negligently inflicted psychological injury as having been presented at all. In either case, we must hold that on this record and intervening precedent from the New Mexico courts, the directed verdict was in error.

We have reviewed earlier the extensive medical and lay testimony tending to establish a case for the jury on the claim of negligent infliction of psychological injury. In considering the sufficiency of the proof to go to the jury on the claim, we must view the record in the light most favorable to the plaintiff, against whom the directed verdict was granted. *Smith Machinery*

*Co. v. Jenkins,* 654 F.2d 693, 697 (10th Cir.1981). And we must give the plaintiff the benefit of all reasonable inferences and should uphold a directed verdict only if the evidence pointed all one way in favor of the defendant-appellee. *Christopherson v. Humphrey,* 366 F.2d 323, 325–26 (10th Cir. 1966). Viewed in this light, we are convinced that the evidence was sufficient to require submission to the jury of the claim that defendant negligently caused psychological injury to the plaintiff, with physical manifestations.

In particular, the defendant contends that the plaintiff failed to present sufficient evidence that defendant's post-operative care was the proximate cause of the plaintiff's psychological injury. Under New Mexico medical malpractice law, the plaintiff must prove proximate cause to a reasonable degree of probability. *Alfonso v. Lund,* 783 F.2d 958, 963 (10th Cir.1986); *Buchanan v. Downing,* 74 N.M. 423, 394 P.2d 269, 271–72 (1964).

Dr. Roll testified that "with a high degree of scientific certainty" the plaintiff's mental distress "is causally related to the operation with Dr. Sakura and its aftermath." V R. 595. Dr. Weber testified that plaintiff suffered a complication and was suffering from it when he saw her, and that it behooves the surgeon when this occurs to discuss the problem and his plan for correction, and that it was imperative for the patient to know about the surgeon's recognition of the complication and his plan to deal with it. V R. 543. Further, Dr. Weber testified on the communication problem that if such concern about the complication is not verbalized, the patient loses faith and he said that "this is what I recognized from Mrs. Whalley when she came to me for consultation." V R. 544.

Plaintiff testified she had tried to discuss her post-operative condition with the defendant but was told there was nothing wrong. IV R. 204–05, 283. Her mother testified that the defendant had said in her daughter's presence that all plaintiff needed was "some chicken soup." V R. 430. Plaintiff's daughter thought that her moth-

er "was scared to death, [and] had no idea of what had just happened" when she discovered the staples on the implant were gone and there was a black hole there. V R. 456. The defendant admitted at trial that he had never discussed the possibility that plaintiff would lose the implant. V R. 408–410. We are satisfied that the expert and lay testimony, considered under the standard we must apply, made out a claim for submission to the jury, including the proximate cause factor.

■ Defendant argues that the expert testimony of Dr. Roll, a clinical psychologist, must be rejected as not satisfying New Mexico's requirement of expert testimony in such a case. Expert testimony is required generally in medical malpractice cases under the state law. *See Gerety v. Demers,* 92 N.M. 396, 589 P.2d 180, 195 (1978). However, defendant points to no New Mexico law requiring expert medical testimony by psychiatrists in cases involving the negligent infliction of mental distress. *Fierro v. Stanley's Hardware,* 722 P.2d 652 (N.M.Ct.App.1985), *rev'd on other grounds,* 104 N.M. 50, 716 P.2d 241 (1986), is inapposite. First, *Fierro* was decided under a statute which required "expert medical testimony" on the causal connection between the accident and the disability in a workman's compensation case. The court of appeals held a clinical psychologist was not qualified to give such testimony in such a case. We are convinced that cases of negligent infliction of psychological injury and emotional distress are different, not requiring the standard of proof for workmen's compensation disability.

Although psychologists like Dr. Roll are not licensed to practice medicine, *see* N.M. Stat.Ann. § 61–9–17 (1985 supp.) (repeal effective July 1, 1992), they typically undergo extensive training in the diagnosis and treatment of mental disease. *Jenkins v. United States,* 307 F.2d 637, 644–45 (D.C. Cir.1962) (en banc). New Mexico's Professional Psychologist Act requires substantial training and experience for certification as a clinical psychologist. *See* N.M.Stat. Ann. §§ 61–9–9, 61–9–10, 61–9–11 (1978)

(repeal effective July 1, 1992). Dr. Roll was more than qualified under this statutory scheme. *See* V R. 552. He received a doctorate degree in clinical psychology from Pennsylvania State University, served as an intern at the University of Pittsburgh, and completed two years of supervised work at the Yale Psychiatric Institute. V R. 552–54. At the time of trial, he was serving as a professor of psychology and psychiatry at the University of New Mexico. V R. 554. He had published a number of scholarly articles on psychology and received several national honors. V R. 553–55. The qualifications of Dr. Weber, a board certified specialist in plastic and reconstructive surgery, were not challenged. V R. 478–80.

The New Mexico courts have relied on credentials like Dr. Roll's in allowing psychologists to testify on a criminal defendant's sanity, *State v. Padilla,* 66 N.M. 289, 347 P.2d 312, 318 (1959), and on "cause of any change in [a] plaintiff's mental ability," *Winder v. Martinez,* 88 N.M. 622, 545 P.2d 88, 92 (Ct.App.1975), *cert. denied,* 89 N.M. 6, 546 P.2d 71 (1976); *see Higgins v. Hermes,* 89 N.M. 379, 552 P.2d 1227, 1229 (Ct.App.) (upholding admission of a psychologist's testimony on the extent of plaintiff's mental anguish), *cert. denied,* 90 N.M. 8, 558 P.2d 620 (1976). *See also, Hooper v. Industrial Commission,* 126 Ariz. 586, 617 P.2d 538, 540 (Ct.App.1980) (allowing psychologist to testify that an industrial accident caused plaintiff's mental disability); *Kravinsky v. Glover,* 263 Pa. Super. 8, 396 A.2d 1349, 1355 (1979) (allowing psychologist to give expert opinion on the cause of plaintiff's "driving phobia"); *Landreth v. Reed,* 570 S.W.2d 486, 488–89 (Tex.Ct.Civ.App.1978) (allowing psychologist to testify regarding the physical manifestations of plaintiff's emotional shock); *Durflinger v. Artiles,* 727 F.2d 888, 890–91 (10th Cir.1984) (applying Kansas law) (holding that a clinical psychologist can testify regarding a physician's standard of care in making a discharge decision).

We hold that the expert and lay testimony was sufficient to present a claim for

submission to the jury of negligent infliction of psychological injury with emotional distress and physical manifestations, as a factual issue. We will now treat the sufficiency of the theory as a matter of law under New Mexico precedent.

**B.**

▪ Defendant's argument on the law is based on a positive requirement that in any case alleging negligent infliction of psychological injury, there must be a resulting physical injury.

More specifically defendant says that there was no evidence that defendant knew or should have known that if plaintiff suffered mental distress, it might cause a physical injury and that plaintiff presented no competent evidence that in fact any physical injury resulted from the claimed emotional distress. Appellee's Answer Brief 18. Defendant pressed the same argument on the requirement of physical injury in the trial court. Defendant's Memorandum in Opposition to Plaintiff's Motion for a New Trial, I R. 146–47. Defendant relies, *inter alia*, on the Restatement (Second) Torts § 313 & comment (c) to Subsection (1).

It appears from statements made by the trial judge, outlined above, that he agreed with the defendant's position on the requirement of resulting physical injury. As noted, the judge stated that he was granting the directed verdict on the basis of Dr. Weber's statement that the defendant's failure to meet the standard of care in communication did not have anything to do with plaintiff's physical problem and the physical aspect of the reconstruction process. V R. 620–21; VI R. 629–630.

We are persuaded that this strict interpretation of the State law was in error in light of intervening New Mexico precedent and the overall developments of the State's tort law. In *Schear v. Board of County*

*Commissioners*, 101 N.M. 671, 687 P.2d 728, 734 (1984), the Supreme Court of New Mexico emphasized that "[w]e have consistently demonstrated our support for those enlightened trends in tort law which reflect concern for tort victims, and the compensatory nature of tort remedies. *See Ramirez v. Armstrong*, 100 N.M. 538, 673 P.2d 822 (1983) ..." In *Schear* the court reversed dismissal of a complaint alleging that the Board's agents did not respond to a call reporting a crime in progress and requesting assistance and that the plaintiff suffered a brutal rape and torture as a result of the agents' inaction. We find instructive the clear statement of policy on the acceptance of trends in tort law.

However, for purposes of this appeal, we find particularly persuasive the New Mexico Supreme Court's opinion in *Ramirez v. Armstrong*, cited by the court in *Schear*, as illustrative of the State's developing tort principles.[3] There the court reversed the dismissal of a complaint for negligent infliction of emotional distress. It was held that the complaint of family members, bystanders who saw their father being struck and killed by a negligently operated motor vehicle, stated a cause of action. They alleged that they suffered physical and mental injury. The court adopted standards for actions for negligent infliction of emotional distress to such bystanders, requiring that there be an intimate familial relationship with the victim; that the shock must be severe and result from a direct emotional impact on the plaintiff caused by contemporaneous sensory perception; that there be some "physical manifestation of, or physical injury to the plaintiff" resulting from the emotional injury; and that the accident must result in physical injury or death to the victim. The complaint of the children as bystanders who saw the accident was reinstated.[4] The court followed

---

**3.** We note that the trial judge did not have before him the *Ramirez* opinion which was decided several months after the trial. Nevertheless we must follow such subsequent state decisions. *See Huddleston v. Dwyer*, 322 U.S. 232, 236, 64 S.Ct. 1015, 1017, 88 L.Ed. 1246 (1944);

*Precision v. Brown & Sharpe Manufacturing Co.*, 742 F.2d 1260, 1262 (10th Cir.1984).

**4.** In *Holler v. United States*, 724 F.2d 104, 106 (10th Cir.1983), we considered *Ramirez* on rehearing and recognized the requirement that

the principles of *Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968).[5]

Under the developing State precedents, we are persuaded that New Mexico would recognize a claim for negligent infliction of psychological injury with physical manifestations, such as the plaintiff's proof developed here. Claims for negligent infliction of emotional injury have been recognized in the context of medical malpractice. *See, e.g., Polikoff v. Calabro*, 209 N.J.Super. 110, 506 A.2d 1285 (1986); *Crivellaro v. Pennsylvania Power & Light Co.*, 341 Pa. Super. 173, 491 A.2d 207 (1985); *Molien v. Kaiser Foundation Hospitals*, 27 Cal.3d 916, 167 Cal.Rptr. 831, 839, 616 P.2d 813, 821 (1980).

The *Ramirez* requirement of physical manifestation or physical injury was met by plaintiff's proof. We noted the testimony of Dr. Roll on physical manifestations including loss of energy, fatigue, psychomotor retardation or slowing down of her mobility, plaintiff's low energy level, and sleep disturbance accompanying her major depression. V R. 561–64; 587–88. These conditions come within the term of physical manifestation. In *Daley v. LaCroix*, 384 Mich. 4, 179 N.W.2d 390, 396 (Mich.1970), the court found proof of sudden loss of weight, inability to perform household duties, extreme nervousness and irritability, to be sufficient physical consequences from which a compensable physical injury could be inferred in an action for negligent infliction of mental distress. Similarly, in *Crivellaro v. Pennsylvania Power & Light Co.*, 341 Pa.Super. 173, 491 A.2d 207, 210 (1985), the allegations of intense headaches, uncontrollable shaking, hyperventilation and shortness of breath, nightmares and the like were held sufficient to sustain a cause of action for negligent infliction of emotional distress. *See also Belt v. St. Louis-San Francisco Ry. Co.*, 195 F.2d 241, 243 (10th Cir.1952) (shock suffered by injured man resulting from movement of train held a compensable physical injury in negligence action).

Here the medical and lay testimony detailing plaintiff's condition was a sufficient showing of "physical manifestations" to satisfy the requirements of New Mexico law.

### IV.

In sum, we hold that the plaintiff's evidence, when viewed favorably to her as it must be in considering a directed verdict against her, was sufficient under New Mexico law for submission to the jury. That evidence tended to show violation by the defendant of a duty of medical care in communication and counselling with plaintiff concerning the failure of the breast reconstruction, that this breach of duty produced a psychological injury with mental distress and physical manifestations, and that this was a proximate result of the defendant's inadequate medical care. The claim was sufficiently presented in the trial court, the evidence on it was sufficient for submission to the jury, and its rejection was in error under New Mexico law.

Accordingly the judgment must be REVERSED and the case REMANDED for a new trial.

.

---

there be some physical manifestation or physical injury to the plaintiff resulting from a negligently inflicted emotional injury. No physical injury was alleged and the third requirement in *Ramirez* was therefore unsatisfied.

**5.** In *Ramirez,* the court discussed the earlier New Mexico Court of Appeals' decision in *Aragon v. Speelman,* 83 N.M. 285, 491 P.2d 173 (1971), relied on by the defendant here. Appel-

lee's Answer Brief 14. The *Aragon* requirement that emotional distress negligently inflicted produce a physical injury was relaxed in *Ramirez;* now it is required only that there be some physical manifestation *or* physical injury resulting from the emotional injury. 673 P.2d at 826. As discussed in the text, we find such evidence of physical manifestations sufficient here.