**Ruben HINOJOSA, Appellant,**

v.

**SOUTH TEXAS DRILLING & EXPLORATION, INC. and John Darrell Riley, Appellees.**

**No. 04–86–00179–CV.**

Court of Appeals of Texas, San Antonio.

Feb. 27, 1987.

Ramon Garcia, Edinburg, for appellant.

Robert R. Biechlin, Jr., Don E. Weiss, San Antonio, for appellees.

Before ESQUIVEL, CANTU and DIAL, JJ.

OPINION

CANTU, Justice.

This is an appeal from a summary judgment in favor of the appellees, John Darrell Riley and his employer, South Texas Drill-

ing & Exploration, Inc. Appellant, Ruben Hinojosa brought suit and alleged that he had suffered severe psychological and mental impairment as a result of hearing his co-worker, Santiago Galvan, fall to his death from an oil rig on January 24, 1982, and then observing Galvan's body where it landed in close proximity to where he was working.

Appellant and Galvan were employed by Air Equipment Rental Inc., which in turn was hired by South Texas Drilling to run the casing of an oil drilling rig in Zapata County, Texas. According to appellant, Riley negligently operated the traveling block on the oil rig before the other crew members were ready. Such action, allegedly, caused Galvan to slip off a platform and fall to his death.

Appellant sued Riley and South Texas Drilling, alleging that Riley's negligence occurred during the course and scope of his employment with South Texas Drilling. Appellees filed a Motion for Summary Judgment. Based upon the deemed responses to their Request for Admissions, appellees argued that appellant had failed to demonstrate that a familial relationship existed between him and Galvan. Appellees further argued that because appellant was not physically injured nor struck by any object, he had no cause of action under the Texas Wrongful Death Statute, TEX. REV.CIV.STAT.ANN. art. 4675 (Vernon Pamp.1986).[1]

Appellees also argued in their motion that appellant was not entitled to recover for negligent infliction of emotional distress as a bystander because he was not closely related to Galvan.

In his response to the motion for summary judgment, appellant argued that his cause of action was "based on a theory of gross negligence and the wrongful infliction of mental anguish leading to his neurosis with its attendant physical manifestations." He further argued that his neurosis is a compensable physical injury. Appellant maintains that the action was not brought pursuant to the wrongful death

statute, which he concedes did not provide him a cause of action, but rather that it arises out of common law negligence.

In *Landreth v. Reed*, 570 S.W.2d 486 (Tex.Civ.App.—Texarkana 1978, no writ) the court adopted the three-prong test set out in *Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968) for foreseeability in cases involving the negligent infliction of emotional distress to bystanders. The relevant factors are:

1. Whether the plaintiff was located near the scene of the accident;

2. Whether the shock resulted from a direct emotional impact upon the plaintiff from the contemporaneous perception of the accident, as distinguished from learning of the accident from others after its occurrence; and

3. Whether the plaintiff and the victim are closely related.

*Landreth, supra* at 489. It is the third prong of this test which is before us for consideration. Appellant bears no familial relationship to Galvan and alleges a relationship only as a co-worker and "close friend."

Initially we note that the California Supreme Court in *Dillon v. Legg, supra,* set out the third prong of the test of foreseeability as "whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship." The Court further stated:

The evaluation of these factors will indicate the *degree* of the defendant's foreseeability: obviously defendant is more likely to foresee that a mother who observes an accident affecting her child will suffer harm than to foretell that a stranger witness will do so ... All these elements, of course, shade into each other; the fixing of obligation, intimately tied into the facts, depends on each case. (Emphasis in original).

*Id.* at 739, 69 Cal.Rptr. at 80, 441 P.2d at 920.

---

1. Article 4675 was repealed by Acts 1985, 69th Leg., p. 7218, ch. 959, § 9(1) eff. Sept. 1, 1985.

*See now* TEX.CIV.PRACTICE AND REM.CODE ANN. § 71.004 (Vernon 1986).

Appellee argues that appellant lacks a familial relationship with Galvan and so is unable to satisfy the third element of the *Dillon* test. Appellant, however, replies that his action is based upon common law negligence, which requires only proof of negligence, duty, proximate cause and damages to support a recovery.

Appellant cites us to the case of *Hill v. Kimball*, 76 Tex. 210, 13 S.W. 59 (1890) in support of his contention. In *Hill* the plaintiff suffered a miscarriage after she was frightened by seeing two of her unrelated servants severely beaten by a neighbor. The court determined that the neighbor was aware that the plaintiff was present and pregnant. The cause was remanded to be tried on a negligence theory. The court pointed out that a fact question existed whether a reasonably prudent man would have anticipated the danger to plaintiff. Thus, whether the injury was foreseeable was not determined.

Clearly Texas has adopted the *Dillon* test in determining the foreseeability of damages to bystanders who are not themselves physically injured by another's negligence. *See Landreth v. Reed, supra. See also, Genzer v. City of Mission*, 666 S.W.2d 116 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.); *Apache Ready Mix Co. Inc. v. Creed*, 653 S.W.2d 79 (Tex.App.—San Antonio 1983, writ dism'd); *General Motors Corp. v. Grizzle*, 642 S.W.2d 837 (Tex.App.—Waco 1982, writ dism'd); *Bedgood v. Madalin*, 589 S.W.2d 797 (Tex.Civ.App.—Corpus Christi 1979), *reversed other grounds*, 600 S.W.2d 773 (Tex.1980); *Covington v. Estate of Foster*, 584 S.W.2d 726 (Tex.Civ.App.—Waco 1979, writ ref'd n.r.e.). However, in all these cases the close relationship prong was satisfied in that the victim and plaintiff were family members.

Recently, in *Hastie v. Rodriquez*, 716 S.W.2d 675 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.) the plaintiff alleged that she was the common law wife of the deceased victim. A jury found that a common law marriage was not established. Therefore, although the plaintiff and victim had lived together for over five years the court held:

Absent the bond of familial relationship, appellant cannot recover damages for mental anguish under 'bystander recovery.'

The other jurisdictions addressing the close relationship element are divided. In *Elden v. Sheldon*, 164 Cal.App.3d 745, 210 Cal.Rptr. 755 (Cal.Ct.App.1985), the victim's unmarried cohabitant was denied recovery for the negligent infliction of emotional distress. The court found that a close relationship under *Dillon* does not include friends, housemates, or those engaged in "a meaningful relationship." The close relationship guideline was construed to require "at least a relationship which is legally cognizable." The court stated:

Any other interpretation would result in an indefinite extension of liability for negligent infliction of emotional distress to every conceivable type of relationship. Neither law nor logic would countenance such a result.... Not every loss can be made compensable in money damages, and legal causation must terminate at some point.

*Id.* 210 Cal.Rptr. at 760.

A similar result was reached in *Drew v. Drake*, 110 Cal.App.3d 555, 168 Cal.Rptr. 65 (1980). The plaintiff had lived with the victim for three years. The court found:

Emotional distress to a spouse or a parent witnessing an injury to spouse or child meets the *Dillon* test because it is reasonably foreseeable that a person standing in such close relationship to the injured person may be present and suffer intense distress. No reported decision extends the 'close relationship' guideline to include friends or housemates ... To allow persons standing in a 'meaningful relationship' (to use a contemporary colloquialism) to recover for emotional distress resulting in physical injury would abandon the *Dillon* requirement that '[t]he courts ... mark out the areas of liability, excluding the remote and unexpected.'

*Id.* at 557, 168 Cal.Rptr. at 65–66.

However, in *Ledger v. Tippitt*, 164 Cal.App.3d 625, 210 Cal.Rptr. 814 (Cal.Ct.App. 1985) the plaintiff, who had tried to marry

the victim twice, had lived with the victim for two years, bore the victim's child and lived with the victim and their child as a family, was permitted to recover for mental anguish suffered when the victim was stabbed in her presence and bled to death in her arms. The court held that it was foreseeable as a matter of law that "the woman a few feet distant ... was likely a loved one who would suffer extreme emotional distress when [the victim] died in her arms." *Id.* at 646, 210 Cal.Rptr. at 826.

The *Ledger* court disagreed with the *Drew* court, finding that *Drew* rewrote the close relationship standard of *Dillon* to require a formal marriage license. The court also distinguished *Drew* by recognizing that the plaintiff in *Ledger* had attempted to marry the decedent, had had his child, and was economically dependent on him. It also gave great weight to the "appalling facts" of the assault and death in her arms. *Id.* at 648, 210 Cal.Rptr. at 827.

Similarily, in *Mobaldi v. Board of Regents of the University of California,* 55 Cal.App.3d 573, 127 Cal.Rptr. 720 (Cal.Ct. App.1976), *disapproved on other grounds, Baxter v. Superior Court,* 19 Cal.3d 461, 138 Cal.Rptr. 315, 563 P.2d 871 (1977), plaintiff, the victim's foster mother, was permitted to recover for her emotional distress after observing hospital personnel negligently administer a fatal dose of medication to the child. The court determined that although there was no biological relationship the emotional bond between the plaintiff and victim possessed all the incidents of a parent/child relationship. The court also found that the hospital officials treated the victim and plaintiff as mother and child, and were aware of their relationship. Thus, they reasoned that the hospital officials should have foreseen the resulting mental anguish.

In *Elden, Drew, Mobaldi,* and *Ledger, supra,* the courts required a familial relationship, although in *Ledger* and in *Mobaldi,* the courts labored to find that such a relationship existed. No recovery for emotional distress was permitted, however, in a clearly non-familial relationship case, *Kate-*

*ly v. Wilkinson,* 148 Cal.3d 576, 195 Cal. Rptr. 902 (Cal.Ct.App.1983), wherein the purchaser/driver of a boat and its passenger witnessed a water skiing accident involving the passenger's best friend. The court in discussing the party's relationship stated:

Rhonda [the victim] and Rebecca [the passenger] were both fourteen years old at the time of the accident. They were best friends and were frequently in each other's company, in each other's homes, and together on social and recreational outings. Rhonda was treated as a 'filial member' of the Kately family, and Rebecca loved Rhonda, cared for her, and held her life as dear as she would have a natural sister.

The relationship between Kately [the driver and Rebecca's mother] and Rhonda was very much akin to that of mother and daughter. Kately loved Rhonda and cared for her and held her life as dear as she did that of her natural daughter.

*Id.* at 580, 195 Cal.Rptr. at 904.

The court concluded that it was "not reasonable to foresee severe emotional trauma being sustained by a complainant who, without any position in the family circle of the victim, has an attachment derived from association with the victim as friend." *Id.* at 585–86, 195 Cal.Rptr. at 907.

The courts of California seem willing to liberally construe the close relationship requirement of *Dillon* to find that a familial relationship exists between victims and plaintiffs. Nevertheless, as stated by the court in *Kately,* "if we err in construing the close relationship guideline of *Dillon v. Legg* as requiring a relationship at least legally cognizable, even if not one of blood or marriage [citations omitted] then it is for the Supreme Court to expand the rationale of *Dillon.*" *Id.*

Other jurisdictions have also considered the close relationship guideline. In *Ramirez v. Armstrong,* 100 N.M. 538, 673 P.2d 822 (1983) three children observed the victim killed while he attempted to cross the street. Two of the children were the victim's natural children, the third child

lived in the victim's home with his family. The court denied recovery to the unrelated child, but recognized a cause of action in favor of the victim's children. In so doing the court expressly determined:

There must be a marital, or intimate familial relationship between the victim and the plaintiff, limited to husband and wife, parent and child, grandparent and grandchild, brother and sister and to those persons who occupy a legitimate position in loco parentis.

*Id.* at 541, 673 P.2d at 825.

The Supreme Court of Wyoming in *Gates v. Richardson*, 719 P.2d 193 (Wyo.1986) limited recovery in bystander cases to those who are permitted by law to bring a wrongful death action. The court reasoned that the Wyoming Legislature's limitation in wrongful death actions was an expression of the community's policy concerning who should be able to recover. It stated:

While we do not expect everyone to easily overcome the sight of violent injury or death to a loved one, we expect them to cope with the sight of violent injury or death to acquaintances or strangers.

\*    \*    \*    \*    \*    \*

Some limitation on the class of plaintiffs is also justified by the potential burden on economic activity that an unlimited class could impose. [citations omitted] A timely example is the space shuttle disaster. If every person who witnessed that catastrophic event and suffered mental harm could recover, the courts would be overwhelmed and such projects as the space shuttle would be laden with insuperable risks. As a society, we must tell most of those who observed the disaster and may have suffered because of it, that it is a suffering that is not compensable. In this we recognize that part of living involves some unhappy and disagreeable emotions with which we must cope without recovery of damages.

*Id.* at 198.

In *Leong v. Takasaki*, 55 Hawaii 398, 520 P.2d 758 (1974) the ten year old plaintiff's stepfather's mother was killed in an automobile accident in the plaintiff's presence. The court held:

Neither should the absence of a blood relationship between the victim and the plaintiff—witness foreclose recovery.

\*    \*    \*    \*    \*    \*

Hence the plaintiff should be permitted to prove the nature of his relationship to the victim and the extent of damages he has suffered because of this relationship. *Id.* at 766. *See also Kelley v. Kokua Sales & Supply, Ltd.*, 56 Hawaii 204, 532 P.2d 673 (1975) (in dicta stating that absence of blood relationship between victim and plaintiff does not foreclose recovery).

In each of these cases the existence of a close relationship is an essential element in determining the foreseeability of the resulting emotional distress. A close relationship may be broadly expressed based upon the circumstances. However, we have found no case wherein a clearly unrelated person, standing in the position of friend or co-worker, was allowed to recover, except in *Hill v. Kimball, supra.* But even in *Hill* a remand was necessary to address foreseeability of the resulting injury.

Since *Hill* the Texas courts have adopted the *Dillon v. Legg* guidelines for determining the foreseeability of injuries resulting from a negligent act in bystander cases. These guidelines require a close relationship between the plaintiff and victim.

A relationship is generally defined as "related by consanguinity or affinity." WEBSTER'S NEW COLLEGIATE DICTIONARY 723 (7th ed. 1963).

Appellant has not alleged any relationship or association between himself and Galvan other than that of co-worker and close friend. Therefore, we hold that appellant has not stated a recognized cause of action entitling him to recover in his capacity as a bystander for physical injuries resulting from the negligent infliction of emotional distress.

■ Generally, we review the granting of summary judgment by determining whether summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of

the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corporation,* 450 S.W.2d 827 (Tex.1970). We need not, however, concern ourselves with the quantum of summary judgment proof offered herein inasmuch as our dispostion of this cause rests upon application of an exception to the general rule. This exception holds that pleadings alone may support a motion for summary judgment when a plaintiff's petition fails to state a legal claim or cause of action. "In such cases summary judgment does not rest on proof supplied by pleadings, sworn or unsworn, but on deficiencies in the opposing pleading." *Hidalgo v. Surety Savings & Loan Association,* 462 S.W.2d 540 (Tex. 1971).

Appellant concedes that an essential element for recovery under traditional bystander standards is lacking in his pleadings but would have us carve an exception. Thus there is no contention that his pleadings state a cause of action under the criteria laid out in *Landreth v. Reed, supra.* Rather the argument made is that *Landreth* should not be applicable insofar as requiring a close familial relationship between the plaintiff and the victim. Under the circumstances, appellant's pleadings were not subject to cure through amendment following the lodging of a special exception. As the pleadings stand, they simply fail to allege a legal claim or cause of action.

The trial court was correct in holding that summary judgment was in order as a matter of law.

The judgment of the trial court is affirmed.