925 P.2d 510

Christine GABALDON, individually and as next friend of her minor children, Victor Baldizan and Charlene Baldizan, Plaintiff–Appellant,

v.

JAY–BI PROPERTY MANAGEMENT, INC., Defendant–Appellee.

No. 22845.

Supreme Court of New Mexico.

Sept. 30, 1996.

Lassen & Jaffe, Albert B. Lassen, Albuquerque, for Appellant.

Kalm Law Office, P.C., Thomas L. Kalm, Gregory W. MacKenzie, Albuquerque, for Appellee.

## OPINION

MINZNER, Justice.

Appellant Christine Gabaldon appeals from summary judgment granted in favor of Defendant Jay–Bi Property Management, Inc. (hereinafter "Jay–Bi") on Gabaldon's claims of negligent infliction of emotional distress. In this appeal we address whether Gabaldon or her daughter, Charlene Baldizan, "contemporaneously perceived" the near-drowning of Victor Baldizan. We take this opportunity to explain the concept of contemporaneous sensory perception. However, we conclude that neither Gabaldon nor her daughter contemporaneously perceived the accident, and we accordingly affirm summary judgment.

### I. FACTS AND PROCEDURE

Jay–Bi operates "The Beach Waterpark" in Albuquerque. The amusement park includes, along with other water attractions, a 700,000–gallon wave pool that creates artificial waves by mechanical means. Nine-year-old Victor Baldizan and his sister Charlene attended The Beach on June 21, 1993 as participants in a City of Albuquerque summer recreation program. While there, Victor suffered a near-drowning in the wave pool. It is undisputed that Charlene was not present at the wave pool when Victor sustained the injuries that gave rise to this litigation. After learning that "[s]omething [had] happened to [her] brother," Charlene walked to the area where Victor was being treated by paramedics.

Victor's mother, Christine Gabaldon, was at work when she received a telephone call from Anne Chavez, a supervisor with the city summer recreation program. Chavez stated that "the wave had taken Victor" and that Gabaldon should come to The Beach right

away. Gabaldon and a co-worker quickly made the short drive to The Beach, where they found Victor as he was being raised into an ambulance. Gabaldon described her reaction when she saw her son:

> I could see his face and eyes and I thought he was dead. He had a mask over his nose and mouth and his body was not moving at all. His eyes were open but kind of rolled back like he was dead. I immediately lost it and became hysterical.

Gabaldon brought an action against Jay–Bi on her own behalf and as next friend of her children. Her amended complaint asserted, inter alia, that she and Charlene "were bystanders who witnessed the effects of [Jay–Bi's breach of the duty owed to Victor and that they were thereby] injured themselves." Jay–Bi filed a motion for partial summary judgment seeking dismissal of the bystander claims on the ground that Gabaldon and Charlene had not contemporaneously perceived the accident as required by *Ramirez v. Armstrong*, 100 N.M. 538, 541–42, 673 P.2d 822, 825–26 (1983). The trial court granted the motion, and Gabaldon brought this appeal.

## II.  DISCUSSION

This Court stated in *Ramirez* that in order to prevail on a claim of negligent infliction of emotional distress (hereinafter "NIED") under a theory of bystander recovery, "[t]he shock to the plaintiff must be severe, and result from a direct emotional impact upon the plaintiff caused by the contemporaneous sensory perception of the accident, as contrasted with learning of the accident by means other than contemporaneous sensory perception, or by learning of the accident after its occurrence." *Id.* at 541–42, 673 P.2d at 825–26 (footnote omitted). We restated the "contemporaneous perception" requirement: "[W]e hold, as a threshold requirement to establish the genuineness of a claim for negligent infliction of emotional distress, it is sufficient to allege and prove that ... the plaintiff suffered severe shock from the contemporaneous sensory perception of the accident[.]" *Folz v. State*, 110 N.M. 457, 471, 797 P.2d 246, 260 (1990).

It is undisputed that Victor was discovered unconscious in the wave pool at 11:30 a.m., at which time lifeguards extricated him and attempted resuscitation. The ambulance arrived at approximately 11:40, and paramedics took over the resuscitation efforts. Gabaldon does not dispute that she and Charlene learned of Victor's accident by word of mouth and that neither of them saw Victor after the accident until he was under the care of paramedics. Nevertheless, Gabaldon urges us to find that she and Charlene contemporaneously perceived the accident as required by *Ramirez.*

Gabaldon argues that the Court of Appeals expanded the concept of contemporaneous perception in *Acosta v. Castle Construction, Inc.*, 117 N.M. 28, 868 P.2d 673 (Ct.App. 1994), such that it now encompasses situations such as this. She also relies upon a line of cases from other jurisdictions. Those cases have permitted recovery when a loved one does not actually witness the accident but arrives upon the scene immediately after its occurrence. We consider these arguments in turn.

A. Whether *Acosta* Expanded the Concept of Contemporaneous Sensory Perception

In *Acosta*, the plaintiff's brother was accidentally electrocuted, and the plaintiff sought compensation for his emotional injuries. The plaintiff did not actually see his brother at the moment of electrocution. However, he did hear his brother scream and he arrived at the scene within eighteen seconds of the occurrence. The issue before the Court of Appeals was thus whether hearing the accident constituted a "contemporaneous sensory perception" as required by *Ramirez.* The Court answered this question affirmatively. *Acosta*, 117 N.M. at 30, 868 P.2d at 675. We conclude that *Acosta* did not expand the concept of contemporaneous sensory perception, but rather properly applied it to the facts presented, as required by applicable precedent.

B. Whether Contemporaneity is a Guideline or a Requirement

The California case of *Dillon v. Legg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912

(1968), has influenced the development of bystander NIED both in New Mexico and throughout the nation. As the United States Supreme Court has recognized, nearly all jurisdictions permitting recovery for NIED under a bystander theory have embraced *Dillon*'s three-part test for foreseeability in some form. *See Consolidated Rail Corp. v. Gottshall,* 512 U.S. 532, 548, 114 S.Ct. 2396, 2407, 129 L.Ed.2d 427 (1994). Prior to *Dillon,* California only permitted recovery when the plaintiff himself was injured or was within the "zone of danger" caused by the negligent conduct.

In *Dillon,* a parent, from a position of apparent safety, witnessed her child being run down by an automobile driven by the defendant. The *Dillon* court's rationale for doing away with the zone-of-danger requirement was that there was minimal danger of a fraudulent claim when a parent witnessed a child being severely injured. "[N]o one can seriously question that fear or grief for one's child is as likely to cause physical injury as concern over one's own well-being." *Dillon,* 69 Cal.Rptr. at 77, 441 P.2d at 917. The *Dillon* court said that the right to recover should instead rest upon "neutral principles of foreseeability, proximate cause and consequential injury that generally govern tort law." *Id.* at 78, 441 P.2d at 918. However, the *Dillon* court recognized that NIED claims carry a significant danger of fraudulent claims. In order to guard against such claims, the court prescribed the following "guidelines" to aid courts in a determination of whether the psychological injury to the plaintiff was foreseeable:

> (1) Whether plaintiff was located near the scene of the accident.... (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related.

69 Cal.Rptr. at 80, 441 P.2d at 920. The *Dillon* court did not treat these factors as mandatory prerequisites. Thus, *Dillon* contemplated that courts would, "on a case-by-case basis, analyz[e] all the circumstances,

[and] decide what the ordinary man under such circumstances should reasonably have foreseen." *Id.* at 81, 441 P.2d at 921.

The result, as acknowledged by both parties to the instant appeal as well as the California Supreme Court itself, was that California's lower courts were "all over the map" in their application of *Dillon.* In some cases, California courts permitted recovery even though the plaintiff was not present at and did not perceive the accident. *E.g., Nazaroff v. Superior Court,* 80 Cal.App.3d 553, 145 Cal.Rptr. 657 (1978); *Archibald v. Braverman,* 275 Cal.App.2d 253, 79 Cal.Rptr. 723 (1969). In other cases, courts reached contrary results *because* the plaintiff was not present when the accident occurred. *E.g., Hoyem v. Manhattan Beach City Sch. Dist.,* 22 Cal.3d 508, 150 Cal.Rptr. 1, 585 P.2d 851 (1978).

In *Thing v. La Chusa,* 48 Cal.3d 644, 257 Cal.Rptr. 865, 771 P.2d 814 (1989), the California Supreme Court acknowledged that *Dillon* had proven to be unworkable. There the court said, "Not surprisingly, this 'case-to-case' or ad hoc approach to development of the law ... has not only produced inconsistent rulings in the lower courts, but has provoked considerable critical comment by scholars who attempt to reconcile the cases." 257 Cal.Rptr. at 876, 771 P.2d at 825. The *Thing* court further noted:

> It is apparent that reliance on foreseeability of injury alone in finding a duty, and thus a right to recover, is not adequate when the damages sought are for an intangible injury. In order to avoid limitless liability out of all proportion to the degree of a defendant's negligence, and against which it is impossible to insure without imposing unacceptable costs on those among whom the risk is spread, the right to recover for negligently caused emotional distress must be limited.

*Id.* at 877–78, 771 P.2d at 826–27. Concluding that a bright line standard was needed, the *Thing* court held that the following preconditions *must* be present in order to recover under a theory of NIED to a bystander: "[The plaintiff] (1) is closely related to the injury victim; (2) is present at the scene of the injury producing event at the time it

occurs and is then aware that it is causing injury to the victim; and (3) as a result suffers serious emotional distress." *Id.* at 880–81, 771 P.2d at 829–30 (footnotes omitted). In effect, then, the *Thing* court took the "considerations" of *Dillon* and turned them into mandatory prerequisites.

New Mexico first permitted a bystander to recover for NIED in 1983 in *Ramirez.* The *Ramirez* Court relied heavily upon *Dillon* and essentially adopted a *Dillon*-type foreseeability approach. Nonetheless, the analytical approach articulated in *Ramirez* was much closer to that of *Thing* than it was to *Dillon* because *Ramirez* specified mandatory preconditions rather than mere guidelines. *See* 100 N.M. at 541–42, 673 P.2d at 825–26.

Most jurisdictions that recognize bystander NIED require either contemporaneous perception of the accident or the accident scene or impose some similar limitation like the zone-of-danger rule or the impact rule. *See Consolidated Rail Corp.,* 512 U.S. at 546–548, 114 S.Ct. at 2406–07. The Restatement (Second) of Torts requires that the plaintiff either be in the zone of danger or sustain actual physical harm. *See* Restatement (Second) of Torts §§ 313, 436, 436A (1965). Courts and treatise writers alike have consistently recognized that such boundaries, however arbitrary, are needed to contain the tort of bystander NIED against fraudulent claims and the expansion of liability out of all proportion to the tortfeasor's fault. *See Consolidated Rail Corp.,* 512 U.S. at 545, 114 S.Ct. at 2405 (recognizing that courts place "substantial limitations on the class of plaintiffs that may recover" under a theory of NIED); *Thing,* 257 Cal.Rptr. at 879, 771 P.2d at 828 ("[D]rawing arbitrary lines is unavoidable if we are to limit liability and establish meaningful rules for application by litigants and lower courts."); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 54, at 366 (5th ed. 1984) ("If recovery is to be permitted ... it is also clear that there must be some limitation.").

In its present state, New Mexico law permits recovery in some situations in which recovery would not be allowed under the formulation in Restatement (Second) of Torts. That formulation permits recovery only if the plaintiff sustained physical harm resulting from emotional disturbance, Section 436, or was within the zone of danger, Section 313, and it affirmatively denies recovery when neither of those circumstances is present, Section 436A. New Mexico has never embraced the zone-of-danger requirement in this context, and we abandoned the physical harm requirement in *Folz. See* 110 N.M. at 469–71, 797 P.2d at 258–60. Nevertheless, bystander NIED is a judicially-created cause of action, and this Court will not continue to impose requirements that it does not believe are "justified by existing circumstances [or that are] devoid of any valid justification." *See Hicks v. State,* 88 N.M. 588, 590, 544 P.2d 1153, 1155 (1975), superseded by statute or other grounds, *see Electro–Jet and Tool Mfg. Co. v. City of Albuquerque,* 114 N.M. 676, 682, 845 P.2d 770, 776 (1992). We construe Gabaldon's argument on appeal as an invitation to explain the concept of contemporaneous sensory perception so that it better serves the interests protected by the tort. We accept that invitation.

### C. What Does "Contemporaneous Sensory Perception" Include?

As the Wisconsin Supreme Court has explained, the challenge that courts have faced in developing the cause of action for bystander recovery has been in balancing competing interests. Those competing interests include "allow[ing] plaintiffs to recover for negligently inflicted severe emotional distress while protecting tortfeasors from spurious claims, from claims concerning minor psychic and emotional shocks, and from liability disproportionate to culpability." *Bowen v. Lumbermens Mut. Cas. Co.,* 183 Wis.2d 627, 517 N.W.2d 432, 445 (1994). Courts and commentators universally agree that the tort of bystander NIED is not available to compensate the grief and despair to loved ones that invariably attend nearly every accidental death or serious injury. *See id.; Consolidated Rail Corp.,* 512 U.S. at 545–548, 114 S.Ct. at 2405–07; *Prosser, supra,* § 54, at 365–66.

In *Bowen,* the Wisconsin Supreme Court attempted to define the tort of bystander

recovery in terms of the interests it protects. The Wisconsin Supreme Court said:

> The tort of negligent infliction of emotional distress compensates plaintiffs whose natural shock and grief upon the death or severe physical injury of a spouse, parent, child, grandparent, grandchild, or sibling are compounded by the circumstances under which they learn of the serious injury or death. This tort reflects, for example, the intensity of emotional distress that can result from seeing the incident causing the serious injury or death first hand or from coming upon the gruesome scene minutes later.

*Id.*, 517 N.W.2d at 445.

■ As a matter of public policy, liability for third-party emotional distress is limited to what we in New Mexico have called "contemporaneous sensory perception of the accident." This term properly includes the sensory perception of the accident itself or its immediate aftermath *at the scene.*

As illustrated by *Acosta v. Castle Construction, Inc.*, 117 N.M. 28, 868 P.2d 673 (Ct.App.1994), a family member may come upon the scene of an accident so soon after the accident that the victim's condition is virtually the same as at the time of impact. We cannot say that the effect on the family member is distinguishable in any meaningful way. In both situations, the family member observes an extraordinary event, one that is distinguishable from the grief and despair that invariably attend nearly every accidental death or serious injury. The *Bowen* case certainly supports this view, and we adopt the following language from that case as an illustration of "contemporaneous sensory perception of the accident."

> [T]he plaintiff observed an extraordinary event ...[,] arriving on the scene of a serious accident minutes after it occurred and seeing her 14–year–old son fatally injured and entangled in the wreckage ...[,] an extraordinary experience, distinct from the experience of learning of a family member's death through indirect means. ... The distinction between on the one hand witnessing the incident or the gruesome aftermath of a serious accident minutes after it occurs and on the other hand

the experience of learning of the family member's death through indirect means is an appropriate place to draw the line between recoverable and non-recoverable claims.

.  .  .  .  .

> The shock of seeing efforts to save the life of an injured spouse in an ambulance or hospital, for example, will not be compensated because it is a life experience that all may expect to endure. The compensable serious emotional distress of a bystander under the tort of negligent infliction of emotional distress is not measured by the acute emotional distress of the loss of the family member. Rather the damages arise from the bystander's observance of the circumstances of the death or serious injury, either when the injury occurs or soon after.

517 N.W.2d at 444–45. We do not, however, favor the possible interpretation of the *Bowen* opinion that leaves for the trial courts to rule on public policy considerations on a case-by-case basis. *See, e.g., id.* at 443–44, 446. Rather, we adopt a bright-line test based upon the bystander's own observation of the circumstances of the death or serious injury, either when the injury occurs or soon after, but before the arrival of emergency medical professionals at the scene.

■ The facts in the present appeal, therefore, do not present a sufficient case for recovery. By the time Gabaldon and Charlene perceived Victor, he was already in the care of trained and properly equipped paramedics who were attempting to reestablish his breathing. We are unable to see how the impact of this scene on the plaintiffs' senses would differ appreciably from the impact of seeing the victim in the hospital. We conclude that the bystander NIED claims raised in this case do not satisfy the contemporaneous perception requirement. The trial court properly granted summary judgment.

### III. CONCLUSION

We take this opportunity to explain the contemporaneous perception requirement set forth in *Ramirez.* The bystander NIED claims raised by Gabaldon and Charlene fail

to meet that requirement. The trial court's grant of summary judgment in favor of Jay–Bi is accordingly affirmed.

**IT IS SO ORDERED.**

RANSOM and FRANCHINI, JJ., concur.