2006-NMCA-097

142 P.3d 11

**Paul MONTOYA, Plaintiff–
Appellant/Cross–
Appellee,**

v.

**Don PEARSON, Defendant–
Appellee/Cross–
Appellant,**

and

**Jun Zhao, Defendant–Appellee.**

No. 25,455.

Court of Appeals of New Mexico.

May 30, 2006.

Certiorari Denied, No. 29,684,
Aug. 17, 2006.

244

Will Ferguson & Associates, P.C., Albert N. Thiel, Jr., Albuquerque, NM, for Appellant/Cross–Appellee.

Guebert, Bruckner & Bootes, P.C., Don Bruckner, Valerie S. Reighard, Albuquerque, NM, for Appellee/Cross–Appellant.

Miller Stratvert P.A., Kelsey D. Green, H. Brook Laskey, Albuquerque, NM, for Appellee.

## OPINION

PICKARD, Judge.

{1} The issue we confront in this case is whether a plaintiff who was injured in a negligently caused auto accident that also killed his passenger may recover damages for the emotional distress of seeing that passenger killed. This is an issue of first impression in New Mexico. In *Madrid v. Lincoln County Medical Center*, 1996–NMSC–049, ¶ 11, 122 N.M. 269, 923 P.2d 1154, our Supreme Court said, "Nor has this court ever resolved whether, for example, a person involved in a car accident who suffers some physical injury may recover damages for the emotional distress associated with witnessing the death of or great bodily injury to another in that accident." Because our cases on negligently caused emotional distress militate against allowing damages in this case, where Plaintiff does not contend that an intimate family relationship existed between himself and the victim, and because we are not persuaded by the out-of-state cases on which Plaintiff relies, we affirm the trial court's decision dismissing Plaintiff's claim for emotional distress damages. We reverse the trial court's decision on costs, holding that an award of costs to Defendant was mandatory in this case because Plaintiff recovered less than Defendant's offer of judgment.

## FACTS AND PROCEEDINGS

{2} Plaintiff was driving his motorcycle with his fiancee, the victim, as his passenger, when he stopped for traffic. It was alleged that Defendant Pearson (Defendant) made an unsafe lane change; Defendant Garduno then ran into Defendant Zhao, which propelled Zhao into the motorcycle. This caused Plaintiff to be thrown from the motorcycle in one direction and thereby escape serious injury, but caused the victim to be run over and killed. Garduno was no longer a party to the action, but was found to be 75% at fault at the trial; Defendant was found to be 25% at fault; Zhao was found to be 0% at fault. The jury assessed Plaintiff's damages at $5,000, and therefore his total damage award against Defendant was $1,250. Prior to trial, Defendant had served Plaintiff with an offer of judgment of $2,001. The trial court declined to award costs.

{3} Plaintiff's complaint alleged in count II a cause of action for negligent infliction of emotional distress premised on witnessing the victim's death. Defendants moved to dismiss that count on the ground that Plaintiff and the victim lacked the necessary marital or intimate family relationship. Plaintiff responded with two arguments: first, that his relationship with the victim satisfied the required elements for bystander recovery, and second, that he was a direct victim of the accident, not merely a bystander, and should be allowed to recoup emotional distress damages pursuant to cases from other jurisdictions that allowed direct victims to recover such damages. Following argument, the trial court granted Defendants' motion. Immediately prior to trial, Plaintiff again sought the trial court's ruling on this issue, and the

trial court again denied Plaintiff the opportunity to seek, or introduce evidence relevant to, emotional distress damages for witnessing the death of his passenger.

{4} During the argument prior to trial, Defendant pointed out that a recent Supreme Court case, *Lozoya v. Sanchez*, 2003–NMSC–009, 133 N.M. 579, 66 P.3d 948, had permitted long-time, unmarried cohabitants to bring a loss of consortium claim, a claim which is similar to one for negligent infliction of emotional distress, but that Plaintiff had not moved to amend his complaint. Plaintiff thereupon disclaimed any "intent to try a bystander liability case." On appeal, Plaintiff has expressly abandoned any claim of negligent infliction of emotional distress for witnessing (as a bystander) the death of a person with whom he shared a close familial relationship. He relies solely on his theory that he is a direct victim of the accident and therefore should be able to recover all damages suffered, including those that were caused by witnessing his passenger's death.

**STANDARD OF REVIEW**

{5} The question of the standards pursuant to which an award of damages may be made in a particular case is a question of law that we review de novo. *See Fernandez v. Walgreen Hastings Co.*, 1998–NMSC–039, ¶ 1, 126 N.M. 263, 968 P.2d 774. The issue of whether costs are mandatory in a particular case is an issue of rule interpretation, which is also reviewed de novo. *Apodaca v. AAA Gas Co.*, 2003–NMCA–085, ¶ 99, 134 N.M. 77, 73 P.3d 215.

**DISCUSSION**

**A. Damages for Emotional Distress Suffered as a Direct Victim**

■ {6} We begin by outlining the three theories under which courts have allowed bystander recovery, and we explain how the direct victim rule relates to those theories. We then discuss emotional distress damages in New Mexico, explaining why existing New Mexico precedent points to the rejection of Plaintiff's theory. We conclude by reviewing policy considerations that support our decision. Because making the law clear and predictable is one of the primary functions of an appellate court and because that function is best served by closely following existing precedent, we decline to chart a course different from the one established by our cases.

■ {7} As a preface, we outline the three theories that have been used to define the boundaries of bystander recovery in different jurisdictions. *See Folz v. State*, 110 N.M. 457, 469, 797 P.2d 246, 258 (1990) (discussing the three theories). (1) The *Dillon* rule, followed in New Mexico, allows damages for an individual who suffers emotional distress "from the contemporaneous observation of an accident involving a close family member." *Madrid*, 1996–NMSC–049, ¶ 9; *see Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 80–82, 441 P.2d 912 (1968) (in bank). (2) Some jurisdictions limit bystander recovery to individuals who are within the zone of danger created by the defendant's actions. *See Engler v. Ill. Farmers Ins. Co.*, 706 N.W.2d 764, 770 (Minn.2005).(3) Impact rule cases ordinarily limit emotional distress damages to plaintiffs who have been physically impacted and in the traditional cases allow recovery only for emotional distress damages that are "parasitic" to the impact. *See, e.g., Reynolds v. State Farm Mutual Automobile Ins. Co.*, 611 So.2d 1294, 1296 (Fla.Dist.Ct.App.1992). The direct victim theory appears to be a relaxation of the impact rule: a plaintiff who suffers injury as a result of the defendant's negligence is allowed to recover for emotional distress suffered as a result of witnessing the death of another in the same accident. *See Long v. PKS, Inc.*, 12 Cal.App.4th 1293, 16 Cal.Rptr.2d 103, 105 (1993).

{8} We most recently discussed emotional distress damages in the context of deciding whether to allow such damages for the economic tort of fraud. *See Williams v. Stewart*, 2005–NMCA–061, ¶¶ 32–39, 137 N.M. 420, 112 P.3d 281. In determining that such damages would not be allowed, we pointed to Supreme Court precedent that had consistently adopted limitations in cases involving emotional distress. *Id.* ¶ 38. We characterized the field of emotional distress damages as "carefully circumscribed" by our Supreme Court, and we noted that the "tort of negligent infliction of emotional distress is 'extremely narrow' and is limited to bystander

recovery." *Id.* (quoting *Fernandez,* 1998–NMSC–039, ¶ 6).

{9} We believe that New Mexico's existing narrow definition of the tort of negligent infliction of emotional distress leads to a rejection of Plaintiff's proposed direct victim theory. In *Ramirez v. Armstrong,* 100 N.M. 538, 673 P.2d 822 (1983), *overruled in part by Folz,* 110 N.M. at 460, 797 P.2d at 249, the case that adopted the *Dillon* rule, our Supreme Court had its first modern occasion to determine whether to allow emotional distress damages for bystanders witnessing an event. In that case, three children, two belonging to the deceased and one who was living with his family, witnessed him being run over. *Ramirez,* 100 N.M. at 539–40, 673 P.2d at 823–24. Another of the deceased's children learned of the death shortly thereafter and viewed him after the accident. *Id.* at 540, 673 P.2d at 824. In ruling that only the deceased's children who actually saw the accident could recover, the Court wrote extensively of parental love and the nucleus of the family. *Id.* at 541, 673 P.2d at 825 ("The existence of a marital or intimate familial relationship is the nucleus of the personal interest to be protected. The tort of negligent infliction of emotional distress is a tort against the integrity of the family unit."). Given the emphasis in *Ramirez* that negligent infliction of emotional distress is a tort against the family, we decline Plaintiff's invitation to substitute an unrelated policy-based requirement—that the plaintiff be involved in the incident that injured the victim—for the familial relationship requirement, which was a requirement that our Supreme Court found to be of crucial importance to the allowance of this type of damages.

{10} We next address Plaintiff's argument that dicta in *Folz,* 110 N.M. at 471, 797 P.2d at 260, appears to foreshadow acceptance of the direct victim rule for which Plaintiff advocates. *Folz* eliminated the requirement articulated in *Ramirez* that a bystander recovery plaintiff must show a physical manifestation of his or her emotional distress. *Id.* In doing so, the *Folz* Court indicated in dicta that the plaintiff could satisfy the more restrictive "impact rule," and that it thus would not make sense to deny her recovery

under *Ramirez* just because she had not shown a physical manifestation of her emotional distress. *Id.* The Court cited *Binns v. Fredendall,* 32 Ohio St.3d 244, 513 N.E.2d 278 (1987) (permitting the plaintiff to recover emotional distress damages for being a passenger in a car in which the driver, the person she was living with, died under particularly gruesome circumstances as a result of the defendant's negligence).

{11} We are not persuaded that this dicta indicates our Supreme Court's approval of the adoption of some form of the impact rule in addition to the cause of action set forth in *Ramirez.* Given the facts of *Folz,* the Court had the opportunity to adopt such a rule, and yet it did not do so. Indeed, the Court chose to overrule part of *Ramirez,* a decision that was only seven years old at the time, rather than adopt a new or supplemental test. Moreover, we believe that subsequent cases have discredited any indication in *Folz* that the cause of action for negligent infliction of emotional distress should be expanded to allow for recovery under other tests or other circumstances. *See, e.g., Fernandez,* 1998–NMSC–039, ¶ 6 ("NIED is an extremely narrow tort that compensates a bystander who has suffered severe emotional shock as a result of witnessing a sudden, traumatic event that causes serious injury or death to a family member."); *Gabaldon v. Jay–Bi Prop. Mgmt., Inc.,* 122 N.M. 393, 395–97, 925 P.2d 510, 512–15 (1996) (explaining the need for bright-line rules and reaffirming the rule requiring contemporaneous sensory perception of the injury-producing event); *Flores v. Baca,* 117 N.M. 306, 310, 871 P.2d 962, 966 (1994) ("There exists in New Mexico no recognized cause of action for negligent infliction of emotional distress except for bystander liability as adopted in [*Ramirez* ]."). In view of these subsequent authorities, we reject Plaintiff's argument regarding the dicta in *Folz.*

{12} We also believe that policy considerations support our decision to reject Plaintiff's direct victim theory. In *Williams,* we referred to the policy rationales behind the emotional distress cases, but we did not discuss them. 2005–NMCA–061, ¶ 38. We deem it appropriate to do so now because

those policy reasons, expressed or alluded to by our Supreme Court in *Fernandez*, 1998–NMSC–039, ¶¶ 20–22, form the backdrop against which Plaintiff's claim for direct victim damages should be assessed.

■ {13} In the area of negligently inflicted emotional injuries, the competing goals are, on the one hand, providing reasonable compensation to injured persons and, on the other hand, weeding out frivolous or fraudulent claims and restricting liability so that it is not out of all proportion to the degree of culpability and so that potential liability will be clear and predictable for courts, insurers, and the public. *Id.*

{14} Cases from other jurisdictions allowing recovery under the direct victim theory tend to implicitly rely on the assumptions that such injuries are foreseeable and that limiting recovery to those plaintiffs who have themselves suffered a physical injury will help to guarantee that only deserving plaintiffs will recover. *See, e.g., Pieters v. B–Right Trucking, Inc.*, 669 F.Supp. 1463, 1471 (N.D.Ind.1987) (focusing on the view that emotional distress damages were understandable under the facts of the case and not likely to be fraudulent); *Long*, 16 Cal. Rptr.2d at 105–06 (noting that the harm suffered by the plaintiff was "predictable" and stating that "[w]ith a direct victim such as [the plaintiff], there is little fear that her claim is fraudulent ... [and t]he circumstances of the case guarantee the genuineness of [her] emotional distress" (internal quotation marks and citations omitted)).

{15} While we acknowledge that an emotional injury such as the one alleged in this case could be considered foreseeable, we are not persuaded that an injury should be compensable just because it is foreseeable. Indeed, our Supreme Court has found foreseeability insufficient to support the imposition of liability. *See Gabaldon*, 122 N.M. at 395, 925 P.2d at 512 ("It is apparent that reliance on foreseeability of injury alone in finding a duty, and thus a right to recover, is not adequate when the damages sought are for an intangible injury." (internal quotation marks and citation omitted)). Rather, in the area of emotional distress damages, New Mexico has tended to reject case-by-case in-

quiries in determining when plaintiffs should be allowed to recover. Instead, we prefer to rely on bright-line rules. *E.g., Gabaldon*, 122 N.M. at 395–97, 925 P.2d at 512–14 (discussing the benefits of our bright-line rule). No matter how principled exceptions to bright-line rules may appear to be, they inevitably make these rules dimmer and more confusing for our courts. *See* Julie A. Greenberg, *Negligent Infliction of Emotional Distress: A Proposal for a Consistent Theory of Tort Recovery for Bystanders and Direct Victims*, 19 Pepp. L.Rev. 1283, 1285–87 (1992) (discussing the confusion in California created by the adoption of a supplemental test allowing recovery for "direct victims" outside of bystander liability) (hereinafter *Consistent Theory* ).

{16} Nor are we convinced that the direct victim theory would serve the goal of consistently allowing recovery to deserving plaintiffs. In fact, we are concerned that Plaintiff's rule would lead to unpredictable results in a particularly undesirable way—it would cause a significant expansion of liability, and yet, as we demonstrate below, it would do little if anything to help ensure fair and consistent recovery for deserving victims. In one Indiana case, for example, the plaintiff was allowed to recover for essentially witnessing the tortfeasor's death, without having any prior relationship to the tortfeasor. *Helsel v. Hoosier Ins. Co.*, 827 N.E.2d 155, 156 (Ind.Ct.App.2005) (permitting the plaintiff to recover emotional distress damages related to the death of the tortfeasor and the tortfeasor's passenger whom the plaintiff witnessed being propelled toward him in a head-on collision and who the plaintiff assumed and later learned had died in the impact). We think allowing recovery under such circumstances goes too far, but when the only standard imposed is that the plaintiff be in the same accident as the victim, it is inevitable that such recovery will be allowed.

{17} We are similarly dissatisfied with the possibility of limiting recovery to direct victims who are in the same private vehicle as the person whose death or injury is witnessed. *See, e.g., Binns*, 513 N.E.2d at 281 ("We strictly limit [recovery] to those plaintiffs directly involved and contemporaneously injured in the same motor vehicle and acci-

dent with the deceased or other injured person."). We acknowledge that the "same car" rule is more principled in that it would guarantee some prior relationship between the two victims. However, when combined with New Mexico law on bystander recovery as it currently exists, the "same car" rule could yield results that are just as arbitrary and inconsistent. For example, a short-term acquaintance who was carpooling with a victim and suffered a minor physical injury would be allowed recovery, while a close friend or relative who lacked sufficient closeness to the victim to recover under our bystander cases and who witnessed the accident from outside the car would be denied recovery.

{18} In the above example, the physical injury is a random occurrence that bears no real relationship to the emotional injury. Thus, the physical injury does little if anything to ensure the reliability of the claim for emotional distress damages. Indeed, it seems highly unlikely that, just because the acquaintance also suffered some unrelated physical injury, the acquaintance's emotional distress would be any more "real" or deserving of recovery than the emotional distress of the uninjured friend or relative. *See Carlson v. Ill. Farmers Ins. Co.*, 520 N.W.2d 534, 538 (Minn.Ct.App.1994) (noting that the plaintiff's physical injuries "are no indication of the reliability" of her claim for emotional distress caused by witnessing her friend die). Moreover, not only does the direct victim theory do little to ensure that the most deserving victims will recover, but recovery becomes unpredictable because it is dependent on whether the plaintiff happens to suffer a fortuitous and unrelated injury. In short, we do not think the presence of physical injury does anything to ensure that emotional distress claims are reliable, that liability is proportional to culpability, or that liability is predictable.

{19} Plaintiff asks us to depart from New Mexico's longstanding requirements for recovery for negligent infliction of emotional distress. We decline to adopt a rule that would undermine our policies of providing clarity for our courts and for the public and of adhering to safeguards that help to ensure that liability is proportional to culpability. *See Fernandez*, 1998–NMSC–039, ¶¶ 20–22. Our emotional distress cases draw lines

that attempt to strike an even balance between allowing deserving plaintiffs to recover (even though some deserving plaintiffs might not recover) and providing predictable and easily administered rules of liability (even though some undeserving plaintiffs might recover). It must be remembered that these lines are drawn in the context of damages that are difficult to quantify and do not adequately compensate in any event. *See Consistent Theory*, 19 Pepp. L.Rev. at 1286–87. Accordingly, we hold that the better rule is to limit the cause of action for negligent infliction of emotional distress to the circumstances satisfying the test articulated in *Ramirez* and clarified in subsequent cases. Because Plaintiff has been compensated for the emotional distress arising out of his own injuries, because he has disavowed reliance on bystander liability as articulated in *Ramirez* and *Fernandez*, and because we reject Plaintiff's direct victim theory, we affirm the decision not to allow him to recover for witnessing his fiancee's death.

## B. Costs

 {20} Prior to trial, Defendant served on Plaintiff an offer of judgment of $2,001. Plaintiff recovered $1,250 from Defendant at trial. Defendant's cost bill claimed $6,545.08 in costs incurred following the offer of judgment, including jury fees, deposition transcript fees, and expert witness fees. Plaintiff filed a cost bill, claiming pre-offer costs of $1,020.38. There were disputes about costs between Plaintiff and Zhao, but they are not relevant to the issue on appeal. The trial court held a hearing on the matter, at the conclusion of which it ruled:

> What I'm going to do is probably not [going to] make everyone happy, and that is I'm going to find, based on the evidence that I heard at trial, that [Plaintiff] is not financially able to pay the costs, and I will not require him or order that he pay costs. On the other hand, I think it would be manifestly unfair for me to, with that ruling, award costs against the defendants [and] in favor of [Plaintiff], and so I am denying [Plaintiff's] request for costs as well.

 {21} Defendant's cross-appeal contends that the trial court erred in so ruling,

and we agree. The costs that are at issue in this case are controlled by Rule 1–068 NMRA, the rule of civil procedure dealing with offers of judgment, and not by Rule 1–054 NMRA, the general rule governing costs.

{22} Our courts have reconciled Rules 1–054 and 1–068 in *Dunleavy v. Miller,* 116 N.M. 353, 360–61, 862 P.2d 1212, 1219–21 (1993), and *Apodaca,* 2003–NMCA–085, ¶¶ 95–101. Both cases explain that when a plaintiff recovers a judgment such that the plaintiff is the prevailing party under Rule 1–054, but does not recover as much as the defendant's pre-trial offer, the award of costs is governed by Rule 1–068. Rule 1–068 makes mandatory the award of the defendant's post-offer costs, although a plaintiff is not precluded from recovering its pre-offer costs as the prevailing party. The ability of the party liable for costs to pay those costs is a factor that may be considered under Rule 1–054, where the trial court has some discretion in the matter. *Apodaca,* 2003–NMCA–085, ¶ 103. But because there is no discretion in the application of Rule 1–068, the trial court's ruling that Plaintiff should not be required to pay costs because he could not afford them cannot stand.

█ {23} Plaintiff advances other reasons why the trial court's ruling should be affirmed. We will affirm a decision if it is legally supportable, even if the trial court articulated erroneous reasons for it. *See Meiboom v. Watson,* 2000–NMSC–004, ¶ 20, 128 N.M. 536, 994 P.2d 1154 (stating that an appellate court "may affirm a district court ruling on a ground not relied upon by the district court, [but] will not do so if reliance on the new ground would be unfair to appellant" (alteration in original) (internal quotation marks and citation omitted)).

{24} Plaintiff contends that the decision as to whether specific items of cost ought to be awarded is within the discretion of the trial court, even under Rule 1–068. Assuming this to be true, Plaintiff's brief nowhere explains why any of the specific enumerations in Defendant's cost bill should not have been awarded. Plaintiff also argues that he was entitled to his pre-offer costs, since he prevailed in recovering a judgment, and that what the trial court did was simply offset the costs he should have received against the

proper costs the trial court wanted to award Defendant. Again, however, Plaintiff does not explain what costs would have been improper for the trial court to have awarded Defendant.

{25} In his reply brief, Defendant acknowledges that had the trial court not erroneously ruled on the basis of Plaintiff's inability to pay, it would have awarded Plaintiff his pre-offer costs of $1,020.38 and Defendant its post-offer costs of $6,545.08, for a net award of $5,524.70 to Defendant. As we have not been convinced that there was any basis for not making this award, we reverse the award of costs with instructions to the trial court to award this amount to Defendant.

**CONCLUSION**

{26} We affirm the trial court's decision not to allow the question of emotional distress damages for witnessing the death of the passenger to go to the jury. We reverse the award of costs with instructions to award Defendant $5,524.70.

{27} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and CELIA FOY CASTILLO, Judges.