IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| SHAILA HAYNES, | ) | No. 34592-1-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE FARM INSURANCE | ) | UNPUBLISHED OPINION |
| COMPANIES, also known as STATE | ) | |
| FARM GENERAL INSURANCE | ) | |
| COMPANY; and STATE FARM FIRE & | ) | |
| CASUALTY COMPANY; and JOHN | ) | |
| DOE, an individual, | ) | |
| | ) | |
| Respondents. | ) | |

LAWRENCE-BERREY, A.C.J. — Shaila Haynes appeals the summary dismissal of her bystander negligent infliction of emotional distress (NIED) claim against State Farm Insurance Companies, her underinsured motorist insurer (UIM). Her appeal presents two general issues.

First, does Ms. Haynes have a viable NIED claim, even though she learned of her husband's motorcycle accident 10 to 15 minutes before she arrived at the injury scene, and even though she arrived at the scene just after the ambulance attendants arrived? We answer the first question in the affirmative.

Second, does Ms. Haynes's action against State Farm involve a coverage dispute or a claim dispute? We conclude that her action involves a claim dispute and deny her request for reasonable attorney fees and costs under *Olympic Steamship*.[1] We therefore reverse in part and affirm in part the trial court's summary judgment order.

## FACTS[2]

Randy Haynes and two friends were riding their motorcycles on Interstate 90, west of Ellensburg, when an erratically driven van attempted to pass them. Shortly after the van passed, it slammed on its brakes and forced Mr. Haynes's motorcycle off the road. Mr. Haynes crashed his motorcycle and suffered traumatic injuries to his head and chest. The van briefly pulled over, but then sped away. The van's driver never was identified.

Jennifer Fordham was one of the two friends that day riding motorcycles with Mr. Haynes. Ms. Fordham knew that Mr. Haynes's wife, Shaila Haynes, was with Nicole Crossett at her house in Ellensburg. Within three minutes of the accident, Ms. Fordham called Ms. Crossett and told her, "'Randy went down on his motorcycle. He's been in an accident.'" Clerk's Papers (CP) at 303. Ms. Fordham described her location as near

---

[1] *Olympic Steamship Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.3d 673 (1991).

[2] Because the trial court dismissed Ms. Haynes's NIED claim on summary judgment, we state the facts and all reasonable inferences in her favor.

Indian John rest stop, and told Ms. Crossett that she and Ms. Haynes needed to get there quickly.

Ms. Crossett then told Ms. Haynes that there was an accident and her husband had gone down on his motorcycle. Ms. Haynes had a bad feeling about the accident, but "honestly didn't know" what to expect. CP at 49. The two immediately got into Ms. Crossett's truck and sped to the accident scene.

Ms. Haynes and Ms. Crossett arrived 10 to 15 minutes after the call. An ambulance arrived just before them.

One of the ambulance attendants prepared a report that described the initial scene. The report notes that Mr. Haynes was laying in the median, wearing a leather jacket, denim pants, and a half helmet with the chin strap still attached and "the helmet had significant damage." CP at 314. Prior to Ms. Haynes's arrival, someone had turned Mr. Haynes over so his mouth was not in the dirt. The attendants had also removed his helmet and also his shirt, presumably to assist with resuscitation, and had placed a backboard under him. Although he had been turned over and placed on a backboard, Mr. Haynes had not been moved from his original location.

Ms. Haynes noticed her husband's "motorcycle was . . . crumbled up in pieces and in parts, strewn all over, and he was further on down from the motorcycle." CP at 47. She ran to him, knelt down where he laid, took his hand, and spoke to him. He did not

3

respond. She noticed "scrapes and blood up on his head," and that his helmet was damaged. CP at 52. The attendant's report described Mr. Haynes as having sustained blunt force trauma to his head and chest. Ms. Haynes suffered emotionally as "a result of seeing [her husband] lying there in the median." CP at 191.

The ambulance attendants then directed everyone to give them room, and they continued to care for Mr. Haynes. After about 10 more minutes, the attendants loaded Mr. Haynes into an ambulance to take him to a nearby field so he could be airlifted by helicopter to Harborview Medical Center in Seattle. Ms. Haynes asked to ride with them, but was told she could not. Once Mr. Haynes was placed in the ambulance, Ms. Crossett and Ms. Haynes sped off to Harborview. About 30 minutes after the two arrived at Harborview, a doctor informed Ms. Haynes that her husband had died.

Months prior to her husband's fatal accident, Ms. Haynes was diagnosed with breast cancer. According to her attending physician, "It is my sincere belief that Shaila has suffered immense mental and physical distress due to her diagnosis and the loss of her husband." CP at 320.

*Procedure*

Ms. Haynes made a claim against her State Farm UIM policy. State Farm paid the $50,000 policy limit for Mr. Haynes's death. Ms. Haynes then sought additional compensation in the form of a bystander NIED claim. State Farm denied her claim on

4

the basis that a bystander NIED claim could not be sustained by one who learned of an accident before coming to the accident scene.

Ms. Haynes filed suit. After discovery occurred, the trial court considered a number of motions and cross motions for summary judgment. The trial court ruled as a matter of law that Ms. Haynes did not have an actionable bystander NIED claim. The trial court concluded that only a person who "unwittingly" arrives at an injury scene could recover under that theory, and Ms. Haynes had arrived at the injury scene after she first learned of her husband's accident. Ms. Haynes timely appealed.

## ANALYSIS

This court reviews summary judgment orders de novo, engaging in the same inquiry as the trial court. *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 483, 78 P.3d 1274 (2003) (quoting *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002)). Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). All facts and reasonable inferences are considered in a light most favorable to the nonmoving party. *Berger v. Sonneland*, 144 Wn.2d 91, 102-03, 26 P.3d 257 (2001). When reasonable minds can only reach one conclusion, questions of fact may be determined as a matter of law. *Ruff v. King County*, 125 Wn.2d 697, 704, 887 P.2d 886 (1995).

5

1.    BYSTANDER NIED CLAIMS IN WASHINGTON

Ms. Haynes contends the trial court erred in dismissing her bystander NIED claim on summary judgment.

a.    *General rule: present at the scene or arrive shortly thereafter*

A bystander NIED action is a "limited, judicially created cause of action that allows a family member a recovery for 'foreseeable' intangible injuries caused by viewing a physically injured loved one shortly after a traumatic accident." *Colbert v. Moomba Sports, Inc.*, 163 Wn.2d 43, 49, 176 P.3d 497 (2008). The plaintiff must be present at the scene of the accident or arrive shortly thereafter. *Id.* at 55.

*Hegel v. McMahon*, 136 Wn.2d 122, 132, 960 P.2d 424 (1998) discussed the contours of the "shortly thereafter" limitation, and adopted the following rule: "We . . . hold that a family member may recover for emotional distress caused by observing an injured relative at the scene of an accident after its occurrence and before there is a substantial change in the relative's condition or location." The purpose of the *Hegel* rule was to narrow the class of claimants to those who are present at the scene before the horror of the accident has abated. *Id.*

b.    Colbert *clarification of the rule*

A decade after *Hegel*, the *Colbert* court sought to clarify the contours of its judicially created cause of action. In *Colbert*, Jay Colbert and his wife were awakened by

6

a 3:00 a.m. telephone call from their daughter Denise's boyfriend. *Colbert*, 163 Wn.2d at 46. The boyfriend told them that Denise had disappeared from the back of a friend's boat at a nearby lake and a search was taking place for her. *Id.* Mr. Colbert took his other children to a neighbor's house and drove to the lake that was about five minutes away. *Id.* By that time, police cars, ambulances, and the fire department were at the scene. *Id.* Mr. Colbert watched the search taking place from a friend's dock on the lake. Mr. Colbert hoped Denise would be found alive because she was an outstanding athlete and a strong swimmer. *Id.*

Almost three hours later, at around 6:00 a.m., rescuers found Denise's body. *Id.* About 10 minutes later, Mr. Colbert saw a buoy pop to the lake's surface. *Id.* at 46-47. He could hear rescuers on the lake talking, and knew the buoy was tied to his daughter's body. *Id.* at 47. From about 100 yards, and in the dim light, he could see his daughter's body being pulled onto the rescue boat, and rescue workers moving her body on the boat. *Id.* Once the rescue boat came to shore, Mr. Colbert saw police bring a stretcher from a nearby ambulance, place a sheet over his daughter's body, and take her body away. *Id.* Denise had died three hours earlier. Her direct cause of death was drowning, partially due to breathing carbon monoxide fumes from the boat. *Id.*

Mr. Colbert filed suit against various defendants. In addition to other claims, he brought a personal claim for bystander NIED. *Id.* The parties moved for summary

7

judgment on various issues, including whether Mr. Colbert had a viable claim for

bystander NIED. The trial court dismissed that claim, reasoning that the crux of such a

claim was the requirement that a bystander relative had to be "'present within a short

period of time [after the accident] to view the victim's suffering.'" *Id.* at 48. The trial

court reasoned that Mr. Colbert "'did not witness any pain, suffering or the like.'" *Id.*

Mr. Colbert appealed, and the Court of Appeals affirmed. *Id.* The Supreme Court

granted Mr. Colbert's petition for review.

The *Colbert* court first reviewed the history of bystander NIED claims in

Washington.

> We [earlier] observed . . . that while a bright line rule limiting
> recovery "to those who witnessed the accident is attractive in its simplicity
> . . . it draws an arbitrary line that served to exclude plaintiffs without
> meaningful distinction." *The tort of negligent infliction of emotional
> distress rests on the fact the plaintiff suffers emotional trauma stemming
> not only from*
>> *witnessing the transition from health to injury, but also from
>> witnessing the aftermath of an accident in all its alarming detail. . . .*
>>> *The essence of the tort is the shock caused by the perception
>>> of an especially horrendous event. . . .* The kind of shock the
>>> tort requires is the result of the immediate aftermath of an
>>> accident. *It may be the crushed body, the bleeding, the cries
>>> of pain, and, in some cases, the dying words which are really
>>> a continuation of the event.* The immediate aftermath may be
>>> more shocking than the actual impact.
> Accordingly, in deciding the scope of the tort, *we sought to identify
> a rule that permitted recovery for those who suffer emotional distress
> because they personally experienced the immediate aftermath of an
> accident that is in reality a continuation of the event. . . .*

8

We concluded that in Washington a cause of action for negligent infliction of emotional distress is recognized *"where a plaintiff witnesses the victim's injuries at the scene of an accident shortly after it occurs and before there is a material change in the attendant circumstances."*

*Id.* at 54-55 (citations omitted) (some emphasis in original).

In applying the standards described above to the facts, the *Colbert* court reasoned:

When Mr. Colbert arrived, the accident had already occurred—he did not observe his daughter's suffering or her condition while she was drowning. Although he may have arrived within a chronologically short time of her death, at no time did he personally experience conditions that can be said to be a continuation of "'an *especially horrendous event*'" involving conditions analogous to seeing a "'*crushed body [or] bleeding*'" or hearing "'*cries of pain [or] dying words.*'"

*Id.* at 57 (alterations and some emphasis in original).

The *Colbert* court also addressed Mr. Colbert's argument that the Court of Appeals erroneously imposed a requirement that the plaintiff arrive "unwittingly" at the accident scene. *Id.* at 59. The *Colbert* court analyzed the Pennsylvania case relied on by the Court of Appeals, *Mazzagatti v. Everingham*, 512 Pa. 266, 516 A.2d 672 (1986). The *Mazzagatti* court rejected the rule in states such as Washington and held that a bystander NIED plaintiff must be at the scene when the accident occurs. *Colbert*, 163 Wn.2d at 60. The *Mazzagatti* court explained that plaintiffs who arrive at the scene after first learning of the injury have a buffer that insulates them from the full impact of observing the accident scene. *Id.* Although the *Mazzagatti* court rejected the "shortly thereafter" rule

9

in states such as Washington, the *Colbert* court held that whether the plaintiff arrived at the accident unwittingly is an appropriate "*consideration*" when determining whether he or she can bring a bystander NIED claim. *Id.*

In *Colbert*, Mr. Colbert knew his daughter's body was lost in the lake, and nearly three hours passed before he saw her lifeless body brought onto the rescue boat. At some early point in these three hours, he likely knew his daughter had drowned, and he had substantial time to brace himself for the full impact of seeing his daughter's body brought onto the boat.

We contrast *Colbert*'s facts to the facts presented here. Ms. Crossett told Ms. Haynes that her husband was in a motorcycle accident along Interstate 90. Although Ms. Haynes feared it might be bad, she "honestly didn't know" what to expect. CP at 49. Also, she did not have long to brace herself for what she might see. When she arrived 10 to 15 minutes after hearing of the accident, she saw her husband's motorcycle and parts strewn all over, and her husband's body in the median laying almost lifeless, with blood coming from his head. A reasonable juror could find that Ms. Haynes did not have the time or opportunity to brace herself for the full impact of what she saw. We conclude the trial court erred when it summarily dismissed Ms. Haynes's bystander NIED claim on the basis of what Ms. Crossett told her 10 to 15 minutes earlier.

The *Colbert* court additionally addressed Mr. Colbert's argument that the Court of

Appeals erroneously imposed a requirement that the plaintiff be physically present at the

scene of the accident before emergency personnel arrive. *Id.* at 60-61. The *Colbert* court

first analyzed the New Mexico case relied on by the Court of Appeals, *Gabaldon v. Jay-*

*Bi Prop. Mgmt., Inc.*, 1996-NMSC-055, 122 N.M. 393, 925 P.2d 510. After analyzing

the case, the *Colbert* court said, "*Gabaldon*'s requirement that the plaintiff be present

before emergency personnel arrive is not consistent with our cases defining the 'shortly

thereafter' requirement. . . . Accordingly, we disapprove of the Court of Appeals'

reliance on . . . *Gabaldon*." *Colbert*, 163 Wn.2d at 61-62.

Similarly, we do not believe that Ms. Haynes's arrival at the injury scene just after

the ambulance negates her claim. Here, Ms. Haynes arrived at the injury scene before

there was a material change in her husband's location or condition. First, her husband's

body had not been moved, other than to roll him over so he could breathe. Second, the

removal of Mr. Haynes's shirt and helmet, and the placement of a backboard under him,

in no way reduced the visual shock of the accident scene. *See Hegel*, 136 Wn.2d at 132

(purpose of "shortly thereafter" rule is to narrow class of claimants to those present at the

scene before the horror of the accident has abated).

### 2. DISPUTE CLASSIFICATION

Ms. Haynes contends that this dispute is a coverage dispute, not a claim dispute. As a coverage dispute, Ms. Haynes would be entitled to attorney fees and costs. "Under *Olympic Steamship*, '[a]n insured who is compelled to assume the burden of legal action to obtain the benefit of its insurance contract is entitled to attorney fees.'" *Matsyuk v. State Farm Fire & Cas. Co.*, 173 Wn.2d 643, 658, 272 P.3d 802 (2012) (alteration in original) (quoting *Olympic Steamship*, 117 Wn.2d at 54).

In Washington, a UIM insured is legally entitled to recover and a UIM insurer required to pay only to the extent that liability could be imposed against an uninsured tortfeasor. *McIllwain v. State Farm Mut. Auto. Ins. Co.*, 133 Wn. App. 439, 446, 136 P.3d 135 (2006). UIM insurance carriers "are not compelled to pay when the same recovery could not have been obtained from an uninsured tortfeasor." *Dayton v. Farmers Ins. Group*, 124 Wn.2d 277, 281, 876 P.2d 896 (1994). *Olympic Steamship* does not apply when the insurer contests questions such as its liability in tort or the amount it should pay. *Matsyuk*, 173 Wn.2d at 660.

State Farm has always admitted it would cover a valid bystander NIED claim. State Farm simply disputed it was liable on Ms. Haynes's bystander NIED claim because Ms. Haynes learned of her husband's accident before she arrived at the injury scene. Although we ultimately determined that Ms. Haynes does state a viable bystander NIED

12

No. 34592-1-III
*Haynes v. State Farm*

claim under the specific facts discussed, this does not turn a claim dispute into a coverage

dispute. Ms. Haynes was not compelled to sue to obtain *coverage* for a bystander NIED

claim, she was compelled to sue to establish State Farm's *liability* on her bystander NIED

claim. The trial court correctly concluded that this dispute is a claim dispute.

Reversed in part; affirmed in part.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Lawrence-Berrey, A.C.J.

WE CONCUR:

Siddoway, J.          Pennell, J.

13