This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.                                                      **NO. 33,020**

**BRADFORD JAMES,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF McKINLEY COUNTY**
**Robert A. Aragon, District Judge**

Gary K. King, Attorney General
Pranava Upadrashta, Assistant Attorney General
Santa Fe, NM

for Appellant

Jorge A. Alvarado, Chief Public Defender
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**GARCIA, Judge.**

{1} The State appeals the district court's order suppressing evidence obtained as a result of the stop of Defendant's vehicle. We issued a calendar notice proposing to affirm, and the State has filed a memorandum in opposition to the proposed affirmance. We have carefully reviewed the arguments made in the memorandum in opposition, and are not convinced that the district court's decision was incorrect, for the reasons discussed below and in the calendar notice.

{2} As the parties are aware, the essential facts of this case are as follows: the arresting officer, traveling a minimum of three to four car lengths behind Defendant on a highway, saw Defendant's vehicle briefly cross over the line separating the road surface from the shoulder, and then observed Defendant's vehicle move away from the shoulder until the tires were touching the line separating Defendant's lane from the next lane of travel. [RP 33] The officer testified that she believed any movement of a vehicle outside its lane of travel constitutes a violation of NMSA 1978, Section 66-7-317. [Id.] She therefore stopped Defendant's vehicle and ultimately arrested him for driving under the influence of alcohol ("DWI"). [RP 31-32] Defendant moved to suppress all evidence obtained as a result of the stop, and the district court held a hearing on the matter. Notably, at the hearing on the motion to suppress the officer did not testify that she thought Defendant might be impaired by drugs or alcohol before she stopped him. Also, when asked point-blank whether Defendant's movements had

affected any other traffic, the officer stated she could not recall whether there were any other vehicles in the vicinity at the time. [RP 33] At the hearing the State did not present any argument in opposition to suppression other than the argument that the arresting officer had reasonable suspicion to believe Defendant had violated Section 66-7-317. The district court found in favor of Defendant and granted his motion to suppress [RP 44], and the State appealed that decision.

{3}     The district court's order granting the motion to suppress specifically found that there was no evidence suggesting that Defendant's movements had affected any other vehicle on the road, or that the movements could not be performed safely. [RP 44] In our calendar notice proposing to affirm we relied on this determination. We also pointed out that the applicable statute, Section 66-7-317(A), has two components: (1) that a vehicle must be driven "as nearly as practicable entirely within a single lane" unless (2) movement outside that lane can be accomplished safely. *See* § 66-7-317(A). Both this Court and our Supreme Court have interpreted this provision's predecessor, which contains identical language, to require a showing of both components—movement outside of one's lane as well as an indication that the movement somehow implicated safety concerns—before a violation of the provision will have occurred. *See Archibeque v. Homrich*, 1975-NMSC-066, ¶¶ 15-16, 88 N.M. 527, 543 P.2d 493 (construing NMSA 1953, § 64-18-16(a)); *Aragon v. Speelman*,

1971-NMCA-161, ¶¶ 6-10, 83 N.M. 285, 491 P.2d 173 (same). In the absence of any evidence that Defendant's movements outside the lane or to the edge of the lane affected safety in any way, we proposed to affirm the district court's determination that the arresting officer did not have reasonable suspicion to believe Defendant had violated Section 66-7-317(A).

{4} The State's memorandum in opposition raises a number of arguments in an attempt to avoid affirmance. The State first points out that it was not necessary to establish that a violation of Section 66-7-317(A) actually occurred, but only that the arresting officer had reasonable suspicion of such a violation. While we agree with this proposition, we also continue to believe that reasonable suspicion of a violation did not arise simply because the officer saw Defendant's vehicle cross one lane line and touch another. It was also necessary for the officer to observe facts indicating that Defendant's movements constituted a safety hazard, and to base the stop of Defendant's vehicle at least partially on that hazard. *See Archibeque*, 1975-NMSC-066, ¶¶ 15-16; *Aragon*, 1971-NMCA-161, ¶¶ 6-10. Instead, the arresting officer testified that she believed a violation of Section 66-7-317(A) occurs as soon as a vehicle moves out of its lane and then back into that lane. [RP 33] This was a mistake of law, as it omits the safety prong of the provision. Given this testimony, the district court could and apparently did find that the officer's stop was based solely on her

4

belief that the movements of Defendant's vehicle, standing alone, violated Section 66-7-317(A). The district court also correctly determined, in effect, that the officer's mistake of law could not provide reasonable suspicion for the stop. *See State v. Anaya*, 2008-NMCA-020, ¶ 15, 143 N.M. 431, 176 P.3d 1163 (noting that "conduct premised totally on a mistake of law cannot create the reasonable suspicion needed to make a traffic stop").

{5} The State points out that, while testifying about her mistaken understanding of the law, the arresting officer did state that she will usually watch the driver to see if another infraction is committed before she stops the driver. If a second infraction does occur she will then stop the driver to see what is going on and whether the driver is "OK." [RP 33] The State contends that this testimony indicates there was indeed a safety component to the officer's stop of Defendant's vehicle, and thus there was reasonable suspicion that a violation of Section 66-7-317(A) had occurred. The problem with this argument is that the officer never related her statement to Defendant; she did not testify that she stopped Defendant in order to see if he was all right, or because she had any concerns about his safety or the safety of any other vehicle in the area. Her general testimony about her usual practice is not helpful to the State's position absent some connection of that usual practice to the particular stop at issue in this case. We note that the district court heard the officer's testimony,

including this statement, and as we pointed out above, the court specifically found that there was no evidence suggesting that Defendant's movements affected any other traffic or could not be done with safety. [RP 44] The district court thus impliedly rejected the possibility that the officer's stop was based in part on a concern for safety. On appeal we are not free to reject the district court's factual determination on this question. *See Anaya*, 2008-NMCA-020, ¶ 5.

{6}      In another attempt to address the safety prong of the statute, the State points out that the video of the stop, which was shown at the suppression hearing, revealed that a white vehicle was traveling in front of Defendant's vehicle at the time. [MIO 11] The State also notes that the officer's own vehicle was in the vicinity at the time. It does not appear that any argument concerning these vehicles was presented to the district court. In addition, the district court was aware of this factual information, but nevertheless refused to find there was any indication of an effect on other traffic. For several reasons we must affirm that factual determination on appeal.

{7}      First, the State does not indicate the distance between the white vehicle and Defendant's vehicle, and does not explain how the safety of a vehicle traveling some distance in front of Defendant's vehicle could have been affected by Defendant's back-and-forth movements in his lane. More importantly, the arresting officer was asked directly whether any other traffic was affected by Defendant's movements and

6

she answered in the negative. Based on this, the district court could have properly decided that either the officer was not aware of the white vehicle's presence or she did not notice any possible impact on that vehicle resulting from Defendant's movements; in either case, the presence of the vehicle in the video has no bearing on the reasonable-suspicion question. *See, e.g.*, *Anaya*, 2008-NMCA-020, ¶ 13 (noting that it is the evidence known to the officer that is relevant to a reasonable-suspicion analysis).

{8}     As to the officer's own vehicle, again there is no clear indication how far behind Defendant's vehicle the officer was traveling at the time of Defendant's movements in the lane. The officer testified she was at least three or four car lengths behind, but also said it took her thirty seconds or more to catch up to Defendant in order to stop him. [RP 33] Perhaps more importantly, the officer did not testify that she believed her vehicle was affected in any way by Defendant's movements. Thus, there was no evidence that the presence of the officer's own vehicle was a factor in her decision to stop Defendant.

{9}     With respect to the reasonable-suspicion question the State relies heavily on a case from the New Mexico federal district court, *United States v. Bassols*, 775 F. Supp.2d 1293, 1302 (D.N.M. 2011). The *Bassols* court found that a single instance of a vehicle touching a lane line constituted a violation of Section 66-7-317(A), and

provided reasonable suspicion for the stop of the defendant's vehicle in that case. Of course, *Bassols* is not binding in any way on this Court. Furthermore, the *Bassols* opinion does not address the "safety" prong of Section 66-7-317(A) and is therefore not persuasive, given the opinions in both *Archibeque* and *Aragon*, discussed above. We therefore afford no weight to the *Bassols* opinion.

**{10}** The State raises one other argument concerning reasonable suspicion, which is that the arresting officer could have stopped Defendant because she had reasonable suspicion that Defendant had committed the offense of careless driving. The State concedes that this argument was not presented to the district court during the suppression hearing, but contends the issue was "generally preserved . . . for appeal" because the State invoked a ruling on the legality of the stop. [MIO 12, fn. 5] This is not the standard for preservation of an issue or argument for purposes of appeal. Instead, to preserve an issue for appeal a party must fairly invoke a ruling or decision on that issue from the district court. Rule 12-216(A) NMRA. Merely arguing that the stop was valid does not fairly invoke a ruling on the entirely different question of whether, if there was not reasonable suspicion for the stop on the grounds advanced by the officer, reasonable suspicion of a different traffic offense might have existed. We will not reverse the district court's decision on the basis of an argument that was not presented to that court. *See, e.g.*, *State v. Janzen*, 2007-NMCA-134, ¶ 11, 142

N.M. 638, 168 P.3d 768 (observing that, "while the [s]tate may have a number of different theories as to why the evidence should not be suppressed, in order to preserve its arguments for appeal, the [s]tate must have alerted the district court as to which theories it was relying on in support of its argument in order to allow the district court to make a ruling thereon"). This is especially true where, as here, the argument would require the court to resolve questions of law mixed with fact—whether Defendant's driving rose to the level of careless driving.

{11}    The State makes another argument that concededly was not presented to the district court. Even if reasonable suspicion was lacking, the State argues the officer could have stopped Defendant under the community-caretaker doctrine because she might have been concerned that Defendant was tired. Again, since this argument was not presented to the district court, that court had no opportunity to find facts and apply legal principles that might have been relevant to the argument, and we will not consider the issue on appeal. *See Janzen*, 2007-NMCA-134, ¶ 11.

**CONCLUSION**

{12}    This might have been a different case if the arresting officer had testified that as a result of Defendant's movements she suspected Defendant of driving under the influence, or when the case was heard by the district court, the State made the arguments it now raises for the first time on appeal. As we have discussed above,

however, the only question presented to the district court was the existence of reasonable suspicion that a violation of Section 66-7-317(A) had occurred. Furthermore, the only basis provided to the district court for the alleged reasonable suspicion was the fact that Defendant's vehicle crossed one lane line briefly and then touched another one. For the reasons stated above and in the calendar notice, this evidence was not sufficient to prove the existence of reasonable suspicion, and we affirm the district court's decision in this matter.

{13}    **IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Chief Judge**

_____
**MICHAEL D. BUSTAMANTE, Judge**